## MAXSON v. UNITED STATES.

### No. K–180.

Court of Claims.
June 1, 1931.

Theodore B. Benson, for plaintiff.

Charles B. Rugg, Asst. Atty. Gen. (Ralph C. Williamson, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, WILLIAMS, and LITTLETON, Judges.

278

GREEN, Judge.

Plaintiff, who is receiver of the International High Speed Steel Company, a corporation, brings this suit to recover $32,945.60 alleged to have been illegally collected as income and profits taxes for the year 1918 from said company.

The parties have stipulated as to the facts. On a casual reading, the findings of fact made pursuant to this stipulation seem like a maze of returns, amended returns, computations made with reference to the taxes involved, and overassessments, together with recomputations thereof. In reality, the facts essential to a determination of the legal questions involved in the case are not only few and comparatively simple, but undisputed, and the only difficulty presented is in determining their legal effect. Nor are the issues complicated.

If we were to again set out in the opinion all of the facts recited in the stipulation of the parties and set forth in the findings, it would only serve to obscure the real points in the case. We think all the facts necessary to be considered can be stated in much simpler form as follows:

The corporation which plaintiff represents as receiver filed in 1919 a tentative return of its income and profits taxes and paid thereon a total of $32,916.80. On March 20, 1919, the corporation filed with the collector a claim for abatement in the sum of $55,000, but, as this claim for abatement was based on ordinary depreciation, it need not be considered. On September 17, 1919, the corporation filed a completed return for 1918, and claimed therein a deduction for amortization of war facilities in the amount of $11,219.24, and on August 4, 1920, the corporation made "An Amended Return" for 1918 under which its taxes were computed at $9,045.96. The same deduction was claimed for amortization and also a deduction "for loss of year 1919." On December 26, 1922, a certificate of overassessment for $29,075.38 was issued. In this certificate the correct tax liability of the corporation for 1918 was stated to be $3,812.62, and in determining this amount the entire deduction claimed for amortization was disallowed. The amount stated for the overassessment was erroneous, as it should have been stated at a larger sum, but the tax was correctly determined if no allowance was made for amortization. The said amount of overassessment was on March 31, 1923, applied on an outstanding additional assessment for 1917, made in January,

1920. On November 24, 1924, another certificate of overassessment was issued as a supplement to the previous certificate in which the amount of overassessment was fixed at $36,149.45, the correct tax liability after certain abatements had been made stated the same as before, and the balance due the corporation according to the Commissioner's books was refunded. On February 17, 1925, the corporation filed a brief protesting the disallowance of the amount claimed on its returns for amortization and claiming a total deduction therefor in the amount of $35,186.-68.

Upon the facts above stated, the plaintiff seeks to recover, first, the sum of $3,812.62 collected on the taxes of 1918; second, $29,-132.98 which was applied on the taxes of 1917.

These claims will be taken up in their order.

The stipulation shows that, if a proper allowance had been made to the corporation for amortization of war facilities, a deduction would have been made of $35,186.68 on account of amortization, which would have eliminated the entire taxable income for 1918 and resulted in an overpayment of $3,812.62 for said year. Defendant concedes that plaintiff is entitled to recover this sum if a proper and timely claim for refund has been filed. On behalf of plaintiff, it is conceded that no formal claim for refund was filed, but it is insisted that the claim for allowance of amortization made by the corporation in its returns constituted an informal claim for refund, and that this claim was supplemented by its brief. The argument is in effect that thereby the statute requiring a claim for refund to be filed was substantially complied with.

It will be observed that the evidence fails to show that a refund was claimed or requested either in the returns made by the corporation or in the brief filed by it, although it was claimed therein that a deduction for amortization should be made as stated above. It may well be doubted whether a claim for a deduction from income which contains no direct reference to a refund can, when disallowed, be treated as a claim for refund, which the statute requires to be filed. In this connection it should be observed that, by reason of the claim for amortization having been denied, this case differs from the cases of Lasher v. United States, 65 Ct. Cl. 295, and Bonwit Teller & Co. v. United States, decided by the Supreme Court April 13, 1931, 283 U. S.

——, 51 S. Ct. 395, 75 L. Ed. ——, for in both of these cases the informal claim had been considered and held sufficient by the Commissioner. In such event the question of waiver of the requirements of the statute may arise, as well as other matters which under such circumstances may make a statement sufficient which does not expressly claim or request a refund. See Wausau Sulphate Fibre Co. v. United States, 49 F.(2d) 665, decided by this court May 4, 1931. But it is not necessary to decide the question of whether the statements made in the returns constituted a claim for refund.

■ The stipulation shows that in making up the first certificate, which showed the correct tax liability for 1918 to be $3,812.62, the entire deduction for amortization which had been claimed in two previous returns was disallowed. This certificate was issued on December 26, 1922. Even if it be conceded that the claim for amortization made in the returns constituted an informal claim for refund, it appears that it was rejected on the last-named date. Having thus been rejected, it could not be amended by a claim filed after the statute of limitations had expired. In Sugar Land Ry. Co. v. United States, 48 F.(2d) 973, 976, decided by this court April 6, 1931, it was said with reference to the claim therein filed:

"It had been considered and rejected by the Commissioner of Internal Revenue, and it could not subsequently, after the statute of limitations had expired, be enlarged or supplemented so as to give the taxpayer any greater right than existed under an original claim filed at such time."

This court accordingly, in the case last cited, refused to consider the claim filed after the statute of limitations as supplemental to what was alleged to be an informal claim, but said that the claim filed after the expiration of the statutory period must be treated as an original claim and therefore "subject to the limitation provisions of the Revenue Act of 1924." So, also, in this case, without considering any of the other objections made to the brief filed by the corporation in the Commissioner's office after the expiration of the statute of limitations, we are constrained to hold that it must be considered separately and by itself, and, if so considered, the claim stated therein is barred by the statute of limitations. See, also, Mutual Life Ins. Co. of N. Y. v. United States, 49 F.(2d) 662, decided by this court May 4, 1931.

■ If we are correct in the foregoing conclusions, it follows that the claim for amortization made in the returns must also be considered by itself and alone. Conceding again for the purposes of the argument that it constituted an informal claim for a refund, it was rejected on December 26, 1922, as before stated, and this suit was not begun until May 7, 1929, more than six years afterwards. The period within which suit could be brought had expired, and, even if it be conceded that an informal claim was thus made, it also is barred by the statute. It follows that plaintiff can not recover the $3,812.62 paid on the 1918 taxes.

■ In addition to the foregoing, it should be pointed out that the amended return for 1918 relied upon by the plaintiff to constitute an informal claim for refund is not in evidence, and we do not know what statements were made therein, nor is the brief of February 17, 1925, in evidence and we do not know what statements it may have contained. Furthermore, it appears that the deduction for amortization mentioned in the amended return had been claimed in the original completed return, and, to that extent, was merely a restatement of the items in the original return; the main purpose of the filing of the amended return apparently being to claim the benefit of a net loss for 1919 against the tax due for 1918. The Commissioner appears to have allowed the net loss, and, as a result, determined an overpayment which was refunded. At the time the amended return was filed on August 4, 1920, the Commissioner had not audited the original return for 1918 and had made no disallowance of the deduction claimed for amortization. A restatement therefore in an amended return of the deductions claimed in an original return before the Commissioner has taken any action thereon cannot be held to constitute a claim for refund merely because the Commissioner subsequently disallowed the deduction.

Plaintiff's right to recover on the second item for which it brings suit depends upon whether the Commissioner lawfully applied an overassessment of $29,075.38 against an outstanding additional assessment for 1917 made in January, 1920, this overassessment having been determined on December 26, 1922, and a certificate of overassessment issued accordingly.

Plaintiff contends that the allowance of an overassessment in this amount still left outstanding a large amount of the original assessment of $80,000 for the year 1918, and that therefore the commissioner had no right to apply any of this amount on the taxes of 1917. We are unable to agree with this con-

clusion. It will be conceded that the Commissioner could not take money paid on 1918 taxes and apply it on those of 1917 while there was anything left unpaid or anything due on the 1918 taxes. But there was nothing due. It is true that the amount of overassessment was erroneously understated in the certificate of overassessment first issued, but the amount remaining due, which was stated in the certificate as the "tax liability corrected," had been correctly determined, and was correctly stated in the certificate. A second certificate of overassessment was issued on November 24, 1924, which stated the tax liability the same as in the first certificate and fixed the overassessment at $36,149.45. This increase in the overassessment did not make the credit of a smaller sum upon the 1917 taxes erroneous. We have no occasion to determine whether the Commissioner could have credited more than he did, but at least he could credit that much, provided this amount was due on the 1917 taxes, and, in the absence of evidence to the contrary, we must assume it was. It is clear that the error in the overassessment in no way prejudiced plaintiff. The fact that no certificate of overassessment had been issued against part of the original assessment did not make the corporation liable for anything beyond the correct amount of the tax, as determined by the Commissioner. When such a determination was made and the amount thereof satisfied, it was the end of the corporation's liability for the year 1918, and any excess in the hands of the Commissioner could be applied on taxes due for another year. It is true that in September, 1924, there was credited from an overpayment for the year 1917 the sum of $13,279.28 against the assessment still outstanding of $36,149.45 for the year 1918, which left a balance of $22,870.17. But subsequently the Bureau corrected and balanced its books by a second certificate of overassessment in which the correct tax liability was stated the same as before, and the $13,279.28 which had been credited out of the overpayment for 1917 was refunded. There was nothing in any of these transactions or the other facts in the case which deprived the Commissioner of the right to credit the overassessment of $29,075.38 upon the taxes of 1917 at the time when the credit was made.

It seems to be suggested rather than argued that the 1917 taxes were outlawed at the time when the credit was applied thereon, which was March 31, 1923. But the corporation had filed an unlimited waiver for 1917 on February 25, 1921, which did not expire until April 1, 1924.

From what has been said above, it follows that plaintiff cannot recover on either of the items for which suit has been brought, and that its petition must be dismissed. It is accordingly so ordered.

WHALEY, Judge, did not hear this case, and took no part in its decision.