## FACTORS' & FINANCE CO., Inc., v. UNITED STATES.

### No. K—13.

Court of Claims.
March 7, 1932.

WILLIAMS, Judge, dissenting.

This suit is for the recovery of $19,995.-44, with interest, representing overpayment of income and profits tax for 1917. There is no dispute as to the amount of the overpayment. The Commissioner of Internal Revenue in his final audit and determination decided the plaintiff had overpaid its 1917 tax in the amount of $32,634.89. He refunded $12,639.45 tax and $3,028.24 interest paid on November 22, 1923, within four years prior to the determination of the overpayment on or about January 13, 1927. He declined to refund the balance of the overpayment, amounting to $19,995.44, on the ground that no sufficient timely claim for refund had been filed. The issue is wheth-er, in the circumstances of this case, a claim for refund for a particular taxable year timely filed by plaintiff, but which claim did not specify any particular item or items causing an overpayment and did not contain any statement of facts showing an overpayment, could be amplified and amended before the commissioner had considered and acted upon it so as to specify the ground of the overpayment for the same years and the facts to sustain it.

### Special Findings of Fact.

1. At all times hereinafter mentioned the plaintiff was and still is a Rhode Island corporation engaged in the manufacture and sale of worsted textile fabrics, with principal place of business at Harrisville. Its corporate name was Stillwater Worsted Company, Inc., until 1920 when its name was changed to Factors' & Finance Company, Inc.

2. June 15, 1918, plaintiff duly filed its income and profits tax returns for the calendar years 1917 and on or about that date paid to the collector the tax shown thereon of $177,338.72. Thereafter, in May, 1920, the commissioner assessed an additional tax of $267.32, which was paid June 29, 1920. In August, 1920, the commissioner made a further assessment of an additional tax in the amount of $25,327.91 for 1917. October 4, 1920, plaintiff paid $9,388.57 thereof, leaving a balance alleged to be due of $15,933.34. On October 1, 1920, plaintiff executed a claim for abatement of $15,933.34 on Treasury Form 47, which was filed October 2, 1920. This claim was made and filed pursuant to advice received by the taxpayer from the officials of the Bureau of Internal Revenue on September 20, 1920.

3. Thereafter an examination of the affairs of the taxpayer in connection with its claim for abatement was ordered by the commissioner May 6, 1921, and pursuant thereto an examination was made by an agent of the Bureau of Internal Revenue between May 18 and June 7, 1922. A report of this investigation was made to the Commissioner of Internal Revenue August 4, 1922, and was received by him August 22, 1922. This examination and report was made in connection with plaintiff's claim for abatement theretofore filed.

4. January 16, 1923, the commissioner advised the plaintiff by letter that an examination of its claim for abatement had been made and that, pursuant thereto, certain adjustments had been made resulting in certain overassessments for 1916 and 1917.

This letter is in evidence as Exhibit H and is made a part hereof by reference. On February 9, 1923, plaintiff filed with the commissioner a brief setting forth exceptions to the proposed overassessments for 1916 and 1917.

5. February 27, 1923, before the Commissioner of Internal Revenue had made and notified the plaintiff of his final determination in connection with his audit of plaintiff's tax liability for 1917 and of his final action on the claim for abatement, plaintiff filed with the collector of internal revenue of Rhode Island a claim for refund of $177,606.04 for 1917. This claim is attached to the petition as Exhibit A and is made a part hereof by reference. This claim, filed on Treasury Form 843, recited the amount claimed to be refundable and that said amount had theretofore been paid on June 15, 1918, and June 30, 1920. The claim was under oath and set forth that it was filed for the purpose of enabling the commissioner to refund to the taxpayer any amount of taxes paid by it on account of the income and profits taxes for 1917 in excess of its true tax liability for that year, and that the true tax liability had not been finally determined by the commissioner. The claim also stated that: "Claimant's taxes for 1917 have not been finally passed upon by the Commissioner of Internal Revenue. This claim for refund is filed in order to save the taxpayer's right's under the pertinent statutes covering abatements, credits, and refunds of income and excess-profits taxes of 1917, and to permit the commissioner to refund to deponent any excess paid over taxes actually found to be due." The claim was forwarded by the collector to the commissioner and was received by the latter March 20, 1923.

Shortly prior to the date of receipt of the claim for refund by the commissioner on March 20, 1923, he had considered, audited, and reviewed the claim for abatement filed October 2, 1920, and had made certain adjustments in the tax liability for 1917 resulting in the determination of an overassessment of $3,293.89. These determinations and adjustments were in connection with the claim in abatement and were predicated upon the report of the internal revenue agent, made in connection with the abatement claim and upon statements submitted by the taxpayer in support of its claim for abatement of $15,933.34. As a result of this consideration, audit, and review, the commissioner prepared a certificate of overassessment

which was forwarded to the plaintiff some time during November, 1923.

The commissioner in his audit and consideration of plaintiff's claim for abatement, as aforesaid, did not consider or act upon the claim for refund filed February 27, 1923.

6. Upon the receipt by plaintiff of the certificate of overassessment from the commissioner, the plaintiff on November 22, 1923, paid to the collector of internal revenue the balance of the taxes alleged to be due by the certificate of overassessment in the amount of $12,639.45, representing the difference between the amount claimed in the claim for abatement and the amount shown as the overassessment in the certificate of overassessment. Plaintiff also paid interest of $3,028.24. The total tax paid by plaintiff for the calendar year 1917, representing the original and additional assessments, amounted to $199,634.06, together with accrued interest of $3,028.24. The true and correct tax liability of the plaintiff on account of the income and excess profits tax for the calendar year 1917, under and pursuant to the pertinent provisions of the revenue act of 1917, was $166,999.17, being $32,634.89 less than the amount paid by the plaintiff, as aforesaid.

7. The Commissioner of Internal Revenue took no action with reference to the consideration or determination prior to July 17, 1925, relative to the claim for refund filed February 27, 1923, or as to its allowance or its rejection.

On July 17, 1925, and prior to any action being taken upon, or consideration or determination given to, the claim filed February 27, 1923, plaintiff duly filed with the collector an amendment to its claim for refund of February 27, 1923, in amplification thereof. In this amendment and amplification plaintiff stated, and specified, that its true tax liability should be determined pursuant to the provisions of section 210 of the Revenue Act of 1917 (40 Stat. 307), which section provided that if the invested capital could not be satisfactorily determined the profits tax should be computed in a certain manner. This claim is attached to the petition as Exhibit B and is in evidence as Exhibit L, and is made a part of this finding by reference. It asks that its claim theretofore filed February 27, 1923, be allowed in the amount therein claimed. The amendment and amplification calling the attention of the commissioner to the pertinent provisions of existing law applicable to the plaintiff's

claim for refund, and under which it was entitled to have its true tax liability computed and determined, likewise contained a statement of facts and certain data compiled from the income and profits tax returns for 1917 theretofore filed by the taxpayer. The amendment also contained the statement that: "Before the tolling of the statute of limitations for 1917 taxes and on or about February 27, 1923, taxpayer filed a 1917 refund claim for the full amount of the 1917 tax paid, $177,606.04, and this doc-. ument is merely the amplification of said claim, setting forth the details in the matter. Taxpayer hereby makes application for assessment under the provision of section 210, of the revenue act of 1917, for the reasons set forth in the attacLed sheets, and respectfully requests the tax adjustments shown thereon."

Thereafter the commissioner entered upon a consideration of the claim for refund and in connection therewith considered the amendment or amplification thereof filed July 17, 1925, and on April 30, 1926, wrote plaintiff a letter that its claim for refund of $177,606.04 for 1917 would be rejected because of insufficiency of proof. This letter is in evidence as Exhibit M and is made a part hereof by reference. To this communication the plaintiff made reply to the commissioner on May 8, 1926, in which it called the commissioner's attention to the statement of facts and data submitted with the amendment of the original refund claim. This reply is in evidence as Exhibit N and is made a part hereof by reference. Thereafter, on May 14, 1926, the commissioner, pursuant to the aforementioned communication from the plaintiff, advised it that in accordance with its request a conference upon the claim had been arranged and would be held in his office on June 22, 1926, and that: "All of the evidence as to law and facts, which you desire to have considered by the bureau in the final determination of the abnormality or abnormalities alleged, must therefore be submitted at once or as far in advance as possible of the date above fixed, in order that the fullest consideration may be given thereto." This letter is in evidence as Exhibit O' and is made a part hereof by reference. Thereafter, on June 22, 1926, a hearing was held in the office of the Commissioner of Internal Revenue at which hearing plaintiff appeared and submitted evidence and data in support of its claim for refund.

8. Thereupon the Commissioner of Inter-

nal Revenue considered plaintiff's original and amended claims for refund and the evidence submitted in support thereof and held that the profits tax for 1917 should be computed under the provisions of section 210 of the Revenue Act of 1917, as claimed. Accordingly, he determined that the true tax liability of plaintiff under the provisions of the Revenue Act of 1917 for the calendar year 1917 was $166,999.17 instead of $202,-727.95, as theretofore determined and assessed by him and instead of $199,634.06 as theretofore collected. He therefore determined that plaintiff had paid as taxes $32,-634.89 in excess of the true amount of tax due for 1917. Accordingly, on January 13, 1927, the Commissioner of Internal Revenue advised plaintiff by letter that, "After a careful review of your protest and of all the evidence submitted in support of your contentions in a conference held in this office on June 22, 1926, you are advised that the bureau holds that your profits tax for the year 1917 should be computed under the above-mentioned provisions [sec. 210, revenue act of 1917]," and computed an overpayment of $32,634.89. In this letter the commissioner further advised plaintiff that $19,995.44 of the determined overassessment and overpayment was barred by the statute of limitation. on the ground that "your claim for refund filed February 27, 1923, or within the period of time allowed for the filing of claims, does not outline or specify an application for relief under the provisions of section 210 of the Revenue Act of 1917, and your claim for refund filed July 18 [17], 1925, amplifying the former claim and outlining an application under section 210 was not filed within the statutory period." This letter is in evidence as Exhibit P and is made a part hereof by reference.

Thereafter the commissioner, on April 8, 1927, executed and mailed to the plaintiff a "Certificate of overassessment" on Treasury Form No. 7776–C, setting forth the true tax to be $166,999.17 and further setting forth that the payments made by plaintiff in excess of its true tax liability were in the amount of $32,634.89. This document is in evidence as Exhibit R and is made a part hereof by reference.

9. By reason of the provisions of section 210 of the Revenue Act of 1917, plaintiff was entitled to have its profits tax for 1917 determined and computed under and in accordance with that section.

10. On June 21, 1927, the commissioner,

refunded to the plaintiff $12,639.45, together with $3,028.24, interest which had been paid thereon. The commissioner declined and refused to refund the balance, i. e., $19,995.44, of the total amount of $32,634.89 found and determined by him to have been overpaid by the plaintiff for 1917.

J. Gilmer Korner, Jr., of Washington, D. C. (Joseph J. Klein, of Cleveland, Ohio, and Myron A. Finke and Samuel M. Fisher, both of New York City, on the brief), for plaintiff.

George H. Foster, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (Charles F. Kincheloe, of Washington, D. C., on the brief), for the United States.

Brewster, Ivins & Phillips, of Washington, D. C., amici curiæ.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, and WILLIAMS, Judges.

LITTLETON, Judge.

The question in this case is whether the original claim for refund could be amended after the expiration of five years from the date when the return for 1917 was due. The defendant agrees that if the claim of February 27, 1923, could be amended before it was decided by the commissioner, the plaintiff is entitled to recover.

The refund claim of February 27, 1923, was timely filed. At that time the audit of the plaintiff's 1917 return and the matter of its tax liability were being considered by the Commissioner of Internal Revenue, and he had not made a final decision with reference thereto. Plaintiff could not, of course, know what the result of the audit of the commissioner would be, and the time within which a claim for refund could be legally filed was about to expire. Accordingly it duly filed the claim of February 27, 1923, duly verified, on the form prescribed by the Bureau of Internal Revenue, asking a refund of $177,606.04. This claim did not state any particular item or items as a ground for refund nor did it set forth any facts which would show an overpayment, but it pointed out that the tax liability for 1917 had not been decided by the commissioner and that the claim was being filed to protect the taxpayer's rights under the pertinent statutes governing refunds and to permit the commissioner to refund any tax paid in excess of that found to be due. At the time this claim was filed there was pending before the commissioner a claim for abatement of an additional tax assessed in August, 1920, which claim had been made the subject of a field investigation and audit of taxpayer's books and records. This abatement claim was finally allowed in part and rejected in part by the commissioner, and a certificate of overassessment showing the abatement of $3,293.89 was forwarded to plaintiff in November, 1923. The commissioner did not consider or act upon plaintiff's claim for refund in connection with his consideration of the abatement claim.

On July 17, 1925, and before the commissioner had taken any action with reference to the refund claim of February 27, 1923, plaintiff prepared on the standard treasury form and duly filed a claim for refund as an amendment and amplification of the earlier claim. The amended claim set forth specifically that the refund should be granted for the reason that the profits tax should be computed under the provisions of section 210 of the Revenue Act of 1917, and requested the commissioner to make such computation. Section 210 provided that if the invested capital could not be satisfactorily determined the profits tax "shall" be determined and computed in a certain manner. The commissioner took up the consideration of these claims. Evidence in support of the claims was furnished by plaintiff, and hearings were held in the commissioner's office after a consideration of which the commissioner held that the profits tax should be computed under section 210 as claimed by plaintiff, and, as a result of such computation, determined the overpayment, a part of which is here in question. In these circumstances we are of opinion that the claim of July 17, 1925, was a proper amendment and amplification of the original claim of February 27, 1923.

The statutory provisions relating to refund claims for overpayment of taxes fall into two classes: First, section 284 (a) and (b) (1) of the Revenue Act of 1926, 26 USCA § 1065 (a), (b) (1), and sections 3220 and 3228 (a) of the Revised Statutes, as amended, 26 USCA §§ 149, 157 (a), provide that the Commissioner of Internal Revenue may not make a refund of overpaid taxes, after a specified period, unless a claim therefor be filed by the taxpayer. So far as a refund by the commissioner is concerned, these provisions do not require the statement in the claim of the facts or theory upon which the claim is based. He may allow such a claim upon any facts of which he may have

knowledge or which he may himself obtain. Second, section 3226 of the Revised Statutes, as amended (26 USCA § 156), provides that before suit can be maintained on a claim for refund a claim must be filed in accordance with the regulations. Reg. 69, art. 1304, which is in substance the same as all previous regulations under the income tax acts, provides that, "All facts relied upon in support of the claim should be set forth in detail under oath."

The difference in the above statutory provisions is: (a) To authorize the commissioner to make a refund of overpaid taxes, he need only have a "claim" therefor before him. No detailed facts need be stated by the taxpayer to enable the commissioner to allow the claim and make a refund. (b) But before the taxpayer can go into court to review the commissioner's treatment of his case, the facts upon which the claim is based must be brought to the attention of the commissioner, and the commissioner thus accorded the opportunity to consider the contentions that the court will have before it. The purpose of this last requirement is to spare the parties and the courts the burden of litigation in respect to the tax. The first purpose under the statutes of filing a claim for refund is to give the commissioner jurisdiction over the matter. If the commissioner is satisfied that the tax has been overpaid, he could make a refund under section 284 (a) and (b) (1) if a mere informal and defective claim or a general "blanket" claim were timely filed with him in which no facts or grounds were stated. Bonwit Teller & Co. v. United States, 283 U. S. 258, 51 S. Ct. 395, 75 L. Ed. 1018. He could not, however, make the refund after the period indicated by the statute unless such a claim were filed, even although he had audited the return and found an unquestioned overpayment. Thus, the prime purpose of a refund claim is to give the commissioner jurisdiction over the matter. He may then of his own accord give the taxpayer any relief which he thinks proper.

However, if the taxpayer desires to protect his right to a judicial review of the commissioner's action, if he should not determine that a refund should be made, he should set forth the facts upon which he relies as entitling him to a refund. Such procedure on the part of the taxpayer is required by section 3226, Rev. St., and the reason for this requirement is clearly established by the decisions of Tucker v. Alexander, 275 U. S. 228, 48 S. Ct. 45, 46, 72 L. Ed. 253; United States v. Felt & Tarrant Mfg. Co., 283 U. S. 269, 51 S. Ct. 376, 75 L. Ed. 1025; Feather River Lumber Co. v. United States, 66 Ct. Cl. 54.

Claims for refund are analogous in theory and purpose to processes and petitions in proceedings in courts and should, we think, be governed by the same rules of law in regard to amendments. In our opinion a timely claim for refund for a particular taxable year, although general in terms, gives the commissioner jurisdiction over the matter of any overpayment of tax for that year, stops the running of the statute of limitations, and the commissioner may, under the relief provisions of the statute or upon facts already in his possession, or upon facts furnished by the taxpayer or facts which he may obtain by his own investigation, repay to the taxpayer any overpayment which he may find in respect to the tax for that particular year. We are of the opinion that the taxpayer may, by amendment or amplification prior to action upon the claim for refund or rejection thereof by the commissioner, bring to the commissioner's attention the particular items of tax liability involved and set forth the detailed facts relied upon; and that a timely claim for refund may thus be amended prior to rejection even though a new or an original claim might be barred by the statute of limitations. Particularly is this true when at the time of filing the refund claim the commissioner had under consideration the audit of plaintiff's tax liability for the year in question in connection with which no decision had been made and the amount of tax which the plaintiff might be called upon to pay had not been determined. Until this determination had been made plaintiff did not know what the basis of the commissioner's final decision would be. The Commissioner of Internal Revenue in his letter to the plaintiff of January 13, 1927, advising it of his decision upon the claim, referred to the claim of July 17, 1925, as "amplifying the former claim."

The amendment of the claim for refund in this case did not set up a new cause of action. The provisions of the various revenue acts are mandatory in their provisions that the commissioner shall audit the return, determine the correct tax liability, collect any tax found to be due, and refund or credit any amount which has been paid in excess of the tax properly due; but it is provided that a refund of the excess tax may not be made unless claim therefor is filed within a speci-

fied time. · These provisions are similar in purpose and effect to the provisions of title 9, Revenue Act of 1924 (43 Stat. 336), and title 10, Revenue Act of 1926 (44 Stat. 105), giving the United States Board of Tax Appeals jurisdiction to determine the deficiency or overpayment in respect of the tax upon the filing by the taxpayer within sixty days of a petition in a case where the commissioner has determined a deficiency. Upon the filing of such petition within the statutory period the board acquires jurisdiction of the tax liability for the period specified in a timely petition and may determine the correct amount of the deficiency due or the amount of any overpayment. Peerless Woolen Mills v. Commissioner, 13 B. T. A. 1119; Peerless Woolen Mills v. Rose (C. C. A.) 28 F.(2d) 661. The board has uniformly held that an incomplete or imperfect petition setting forth no grounds or facts, as required by Rule 5 of the board, may be perfected or amended after the time for filing a petition has expired. The board has also held that a taxpayer may amend his petition to restate his case with more accuracy or certainty or to correct a mistake or supply a deficiency so long as it does not thereby declare a new and different cause of action even where the time of limitation has run, and that the nature of the cause of action in general under the original petition is the determination of the correct tax for a certain period. The Peruna Co. v. Commissioner, 11 B. T. A. 1180, 1188; Marion Shainwald Sevier v. Commissioner, 14 B. T. A. 709, 716.

■ The only restriction upon the power of a tribunal to allow amendments is that it. cannot permit a party, by amendment, to set up a new cause of action barred by limitation over which the tribunal did not acquire jurisdiction under the original process, petition, or claim. The Commissioner of Internal Revenue having jurisdiction under the claim filed February 27, 1923, to determine *an overpayment,* was not limited to the theory, grounds, or items of computation that might be the basis of determining it. He had the same authority to consider new contentions directed to the same end, i. e., the determination of the correct amount which had been erroneously collected, that a court would have to allow amendments to a pleading which did not bring in a new cause of action. The statute creates a cause of action before the Commissioner of Internal Revenue for an overpayment of tax for a given year and not necessarily for each disputed item on or omitted from the return. See St.

Louis & S. F. R. Co. v. Loughmiller (D. C.) 193 F. 689; Illinois Surety Co. v. United States (C. C. A.) 215 F. 334, 339; Swift & Co. v. United States, 67 Ct. Cl. 322; 14 Op. Attys. Gen. 615. Compare Lewis v. Reynolds, 52 S. Ct. 145, 76 L. Ed. ——, decided January 4, 1932. The taxpayer may therefore so long as his claim is pending before the commissioner, and not decided, bring to the attention of the commissioner by amendment specific items and the facts with reference thereto.

The defendant relies in this case upon L. O. 1116, III–1 C. B. 350, published by the Solicitor of Internal Revenue in 1924. We think that opinion is not applicable here. The solicitor held that although a claim for refund might be amended, even after rejection, before the expiration of the statutory period for filing a new claim, a claim which had been rejected could not be amended after the expiration of the statutory period. This ruling was sound. Sugar Land Railway Co. v. United States, 48 F.(2d) 973, 71 Ct. Cl. 628; Mutual Life Ins. Co. of New York v. United States, 49 F.(2d) 662, 72 Ct. Cl. 204; Edward Maxson v. United States, 50 F.(2d) 276, 72 Ct. Cl. 335. If a new claim were in order, accepting amendments to the old one would be the same as accepting a new one. If the original claim had been rejected and the time for filing a new one had expired, the commissioner would be without jurisdiction to consider an amendment unless he might reconsider and reopen his decision on the original claim.

■ In this case the original claim for refund was timely and, though perhaps lacking in adequacy as to details, it gave the commissioner jurisdiction and was susceptible of amplification and amendment. By the amendment filed, before the commissioner had acted, the commissioner was fully advised as to the grounds and the facts relied upon. He was not misled. The rule is settled that a taxpayer may not bring a suit in court to collect a refund of a tax unless he has put the Commissioner of Internal Revenue upon notice of the nature of his claim so that the commissioner may act intelligently on the claim with the facts before him and, thus, have an opportunity to correct errors and mistakes before making his decision on the claim. The logic of the situation leads to the implication that if a taxpayer has put the commissioner on notice of the nature of his claim and has placed all the facts relating thereto before the commissioner prior to his consideration or action upon

such claim, the commissioner then has full opportunity to correct errors and mistakes and to make, a proper refund without burdening the parties and the courts with unnecessary litigation. It thus follows that when a condition precedent giving rise to the rule has been met and complied with, the reason for the rule ceases and the rule itself is no longer applicable. In Tucker v. Alexander, supra, the court said: "The statute and the regulations must be read in the light of their purpose. They are devised, not as traps for the unwary, but for the convenience of government officials in passing upon claims for refund and in 'preparing for trial. Failure to observe them does not necessarily preclude recovery." Statutes must have a reasonable construction, and the language must be interpreted with reference to the subject-matter and the general course of business to which they relate, and in such manner that the beneficent provisions of remedial laws may not be thwarted by nice technicalities not within the minds of the legislators. Lynch v. Alworth-Stephens Co., 267 U. S. 364, 370, 45 S. Ct. 274, 69 L. Ed. 660; Old Colony R. Co. v. Commissioner of Internal Revenue, 52 S. Ct. 211, 76 L. Ed. ——, decided February 15, 1932. The evident object aimed at by the law was to have the proceeding for the refund of taxes actually instituted within the time limit, in order to avoid the consideration of stale claims, and not to define the manner in which they should be presented to the commissioner, or to define the limits of his authority to consider and decide matters as to the correct overpayment that might be presented by an amendment to a timely claim prior to his decision thereon. The commissioner considered these claims and after hearing the plaintiff thereon, and considering the facts and information submitted by the plaintiff, determined the overpayment in question upon the grounds specified. The plaintiff is therefore entitled to recover.

Judgment will be entered in favor of plaintiff for $19,995.44, with interest as provided by law. It is so ordered.

BOOTH, Chief Justice, and GREEN, Judge, concur.

WILLIAMS, Judge, dissents.

WHALEY, Judge, took no part in the decision of this case.