**MUTUAL CHEMICAL CO. OF AMERICA v. UNITED STATES.**

No. M-1.

Court of Claims.

Jan. 8, 1934.

H. Maurice Fridlund, of New York City (Charles T. Cowenhoven, Jr., and Kirlin, Campbell, Hickox, Keating & McGrann, all of New York City, on the brief), for plaintiff.

James A. Cosgrove, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen. (William W. Scott, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

This case presents two questions, namely, whether the claim for refund filed February 18, 1925, was sufficient in law to entitle plaintiff to a refund for 1919 based upon a proration to invested capital for that year of the correct tax for 1917 and 1918 after special assessment for those years had been allowed and the tax theretofore paid on the return and the additional tax collected by credit were found to be greatly in excess of the tax due, and whether there was such a disallowance or rejection of this claim by the Commissioner on May 14, 1926, as would result in this suit, which was instituted January 2, 1931, being barred.

Plaintiff contends that the claim was sufficient and that it was not finally or specifically rejected by the Commissioner until his letter of August 28, 1929, in which he refused to allow the refund. The defendant, on the other hand, insists that this claim was insufficient in that it was in general terms and contained no statement of facts showing that the tax for 1919 had been overpaid, and that, while it was susceptible of amendment before rejection, it was disallowed and rejected by the Commissioner by the issuance of certificates of overassessment allowing a separate claim filed by plaintiff on other grounds, and that the last claim of November 15, 1928, was therefore an original claim filed after the statute of limitation had expired.

In the circumstances of this case, we are of opinion that the claim of February 18, 1925, was sufficient under the statute and the regulations and that it was not finally disallowed and rejected by the Commissioner within the meaning of that term as used in section 3226 of the Revised Statutes (as amended 26 USCA § 156) until the action taken by him in his letter of August 28, 1929. The case is in principle similar to that of Arthur K. Bourne et al., Executors, v. United States, 2 F. Supp. 228, 76 Ct. Cl. 680, in which the Commissioner made certain allowances of overpayments from time to time on a claim timely filed, and within two years from the institution of the suit definitely and finally disallowed a portion of the overpayment claimed. The facts and circumstances in the instant case distinguish it from the cases of Maxson v. United States, 50 F.(2d) 276, 72 Ct. Cl. 335, and Moses et al. v. United States (D. C.) 43 F.(2d) 653, upon which the defendant relies. In those cases the courts held upon the facts there disclosed that an allowance of a claim for refund in part amounted to a rejection of the balance. But, even in a case where there is only one claim, there may be extenuating facts and circumstances showing a lack of intention to reject the claim as to the balance, and we have come to the conclusion that there are such facts and circumstances in the instant case.

With reference to the sufficiency of the claim of February 18, 1925, the facts disclose that prior to the filing thereof the Commissioner had under consideration and audit plaintiff's taxable years 1917 and 1918, and the question whether its profits tax for those years should be computed under the special provisions of sections 210 and 328 of the Revenue Acts of 1917 and 1918 was involved. Plaintiff thereupon filed a claim for refund for each of the years based on this ground. These claims were definite and specific in their statement of facts, the claimed rate of profits tax, the amount of overpayments, and the corporate taxpayers engaged in a like or similar trade or business which it was believed should be used as comparatives. It was well known to the Commissioner and to the plaintiff that the amount of the statutory invested capital for a particular taxable year, with respect to which the statute imposed an excess profits tax, was affected by the amount of tax due for the previous year; the greater the tax for the previous year the less the invested capital and the greater the profits tax for the subsequent year.

While the matter of the tax liability for 1917 and 1918 was under consideration by the Commissioner in connection with plaintiff's claims for refund based on special assessment and before he had proceeded very far with his consideration of the year 1919, for which a revenue agent had made a report

556

recommending overassessment, the Commissioner wrote plaintiff a letter, on January 21, 1925, suggesting that, inasmuch as the correct tax liability for the prior year for which plaintiff had filed claims for refund, was indeterminate, a claim for refund be filed for 1919 in order that a refund of any overpayment that might ultimately be found to have been made for that year might not become barred. Accordingly the claim of February 18, 1925, was filed and this letter of the Commissioner was attached to and made a part of the claim. It seems evident that this letter of the Commissioner had reference to two grounds upon which an overpayment for 1919 might result when a final decision with respect thereto was made, namely, special assessment for 1917 and 1918 which, if allowed, would reduce the tax paid for those years and thereby increase invested capital for 1919, and the adjustments made by the internal revenue agent in charge in his report recommending the allowance of an overassessment on other grounds.

■ At the time this letter was written, the Commissioner had under consideration the plaintiff's claims for refund for 1917 and 1918 based on special assessment, and there was therefore no indefiniteness in the claim of February 18, 1925, or lack of understanding of the ground thereof and the facts disclosed and relied upon by plaintiff, as plaintiff pointed out that it was entitled to an overpayment for 1919 because of its claims for refund based on special assessment for 1917 and 1918. The claim appears to have been as definite and as specific as the circumstances required or permitted. It definitely stated a ground, namely, that special assessment for 1917 and 1918 would result in an overpayment for 1919. The overpayment, for which this suit is brought, resulted from that cause. The claim was sufficient to advise the Commissioner of the reasons the plaintiff put forward then and now for its allowance. The Commissioner was not misled by plaintiff's failure to set forth at greater length and in more detail the reasons why there would be an overpayment for 1919 if special assessment should ultimately be allowed for 1917 and 1918. Such overpayment would result as a matter of course if the reason advanced by plaintiff in its claim should prevail. The amount of the overpayment was only a matter of computation of the invested capital and the tax in accordance with the statute and the regulations. The specific facts from which an overpayment for 1919 would result were impliedly, at least, contained in the Commis-

sioner's letter to the plaintiff of January 21, 1925, which was made a part of the claim. The refund claim of February 18, 1925, in addition to the ground based on special assessment, included a claim in broad and general terms that "an examination thereof [1919] has been made and an overassessment recommended in the amount of $200,847.45." Therefore the second claim filed October 29, 1925, which was timely, was a claim intended specifically and definitely to state the facts and ground relied upon by the taxpayer which had been included in general terms in the earlier claim of February 18. The last-mentioned claim was based wholly and specifically upon the revenue agent's report recommending an overassessment of $200,847.45, which did not involve the ground stated in the earlier claim that there was also an overpayment for 1919 because the tax for 1917 and 1918 had been overpaid. In these circumstances we think the claim of October 29, 1925, was not an abandonment by the taxpayer of the earlier claim for an overpayment for 1919 based on special assessment for 1917 and 1918. The same is true with reference to the third claim for refund filed February 23, 1926, based specifically upon a supplemental report of the revenue agent and the Commissioner's letter of February 6 increasing the overassessment shown in a previous report upon which the claim of October 29 was based.

■ In addition to the foregoing, we are of opinion, for the reasons hereinafter stated, that the claim of February 18, 1925, was not specifically and finally disallowed until August 28, 1929, and that the claim, in two parts, filed November 15, 1928, based on the segregation of the year 1919 into two taxable periods of six months each, was a proper amendment and amplification of the earlier claim of February 18, 1925. There is and can be no question as to the sufficiency of the claim of November 15, 1928, as an amendment of the previous claim of February 18, 1925.

■ Was the statement made by the Commissioner in the certificate of overassessment of May 14, 1926, for the last six months of 1919, that "in the determination of this overassessment, the statements made in your claims for the refund of * * * $655,436.43 have been given careful consideration," a definite disallowance and rejection of the claim of February 18, 1925? This statement in the certificate of overassessment must be interpreted in the light of conditions existing at the time it was made and also in connection with other statements contained in both cer-

tificates of overassessment showing the subject-matter or grounds upon which the overassessments disclosed therein had been based. It should be noted at this point that no such statement was contained in the certificate of overassessment for the taxable period consisting of the first six months of 1919, and $12,592.01 of the overpayment here claimed was for this period. The Commissioner may give consideration to statements contained in a claim for refund without definitely rejecting the claim or intending to do so.

The question whether there was an overpayment for 1919 on account of the tax for 1917 and 1918 being less than that determined and collected was not before the Commissioner for decision at the time he audited the 1919 return or at the time he issued the certificates of overassessment allowing an overpayment on grounds entirely different from those stated by plaintiff in the claim of February 18, 1925, and such question had not been before him for decision since his determination of October 19, 1925, which was appealed to the Board of Tax Appeals December 18, 1925.

The question whether plaintiff's tax for 1917 and 1918 should be computed under sections 210 and 328, and consequently whether there was an overpayment for 1919 on the ground stated by plaintiff in the claim of February 18, 1925, had passed out of the hands of the Commissioner and was pending before the Board of Tax Appeals, undecided, when the certificates of overassessment for 1919 were prepared and issued by the Commissioner. In these circumstances we think a proper interpretation of the statute requires the conclusion that the Commissioner was not in a position legally to reject a timely and sufficient claim for refund so as completely to deprive a taxpayer who had filed such claim from receiving the benefit thereof when he succeeded in establishing the overpayment on the ground specified. This view finds support in the provision of the statute to the effect that, if a taxpayer files a timely claim for refund for a particular year and the Commissioner, instead of allowing it in whole or in part, determines a deficiency for that year, any overpayment resulting from a final decision by the Board shall be refunded, although the claim may have been definitely and specifically rejected at the time the Commissioner proposed the deficiency.

In both certificates of overassessment for 1919, quoted in finding 9, the Commissioner pointed out in the first statement contained in these certificates that "An audit of your income tax return and a consideration of all the claims filed by you indicate that the tax assessed for this year was in excess of the amount due. The adjustments shown in the accompanying schedules [attached to the certificates] disclosing this overassessment have been made on the basis of facts and data now before the Unit, in connection with a revenue agent's report dated September 6, 1924." These were clear statements by the Commissioner that, although he had not overlooked the claim of February 18, 1925, he was not deciding the question presented by that claim, and that the overassessments allowed and disclosed in the certificates *were based upon the facts and information before the Unit as disclosed in the revenue agent's report,* which report, as hereinbefore pointed out, in no way involved any facts, information, or recommendation with reference to the ground stated in the claim of February 18. These facts, when considered in connection with the further statement inserted in the certificate of overassessment for the last six months of 1919 that "in the determination of this overassessment, the statements made in your claims for the refund of * * * $655,436.43 have been given careful consideration," and other pertinent facts and circumstances in connection with the case, show, we think, that the last-mentioned statement was not a disallowance or rejection of the claim of February 18, 1925. This conclusion is further supported by the letter of August 28, 1929, in which the Commissioner, instead of holding that the claim of February 18, 1925, had been decided and disallowed, took the position that the claim of November 15, 1928, based on the same ground and facts as the earlier claim, presented "the issues involving adjustment to invested capital for 1919 on account of 1917 and 1918 income and profits taxes and the relief provided by sections 327 and 328 of the Revenue Act of 1918 * * * for the first time," and that, inasmuch as the limitation period for filing claims for 1919 had expired prior to the submission of these issues in the claim of November 15, no refund or credit could be made. The Commissioner's letter of January 30, 1930, simply reaffirmed this position.

It is our opinion that this suit was not barred at the time it was instituted January 2, 1931, and that plaintiff is entitled to judgment for the amount of the overpayment of $29,505.93, with interest, as provided by law. Judgment will be entered accordingly. It is so ordered.

BOOTH, Chief Justice, and WILLIAMS, Judge, concur.

WHALEY and GREEN, Judges, concur in the result.