## COMMISSIONER OF INTERNAL REVENUE v. ALLDIS' ESTATE.

### No. 9470.

Circuit Court of Appeals, Sixth Circuit.

Feb. 10, 1944.

Morton K. Rothschild, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, and Helen R. Carloss, all of Washington, D. C., on the brief), for petitioner.

George L. Cassidy, of Detroit, Mich., for respondent.

Before HICKS, ALLEN and McALLISTER, Circuit Judges.

HICKS, Circuit Judge.

Petition to review a decision of the Board of Tax Appeals that respondent, as the administratrix of the estate of Frederick L. Alldis, had overpaid the income tax due from said estate for the year 1938 in the sum of $4,377.04. The facts are undisputed. They are briefly as follows:

At the time of his death on January 27, 1938, Frederick L. Alldis owned one hundred shares of beneficial interest in the Chrysler Management Trust. His administratrix, respondent here, pursuant to the terms of the Trust, sold these shares to the Chrysler Corporation for $56,472.20, which amount she reported as received from the sale of a capital asset of the decedent and upon which she reported a taxable income of $26,986.10. Respondent filed a claim for overpayment which the Commissioner rejected. The basis for the refund claim was that the Trust was an "Association" taxable as a corporation and that decedent's shares therein were a capital asset, the appreciation of which in value did not constitute income accrued between

January 1, 1938, and the date of his death, January 27th. The Board rejected this contention. The petitioner contended that the Trust was "an Employees' Trust" under Sec. 165 of the Revenue Act of 1938, 26 U.S.C.A.Int.Rev.Acts, page 1082, and that the income therefrom was taxable to the beneficiaries. The Board also rejected this contention and petitioner makes no complaint here of this holding.

The questions with which we are particularly concerned are, (1) whether that part of the sum of $56,472.20, which represented contributions made by the Chrysler Corporation to the Trust, constituted compensation to decedent under Sec. 22(a) of the Revenue Act of 1938, 26 U.S.C.A.Int. Rev.Acts, page 1008; and (2) whether such part of the $56,472.20, which was not compensation, constituted capital gain under the same section.

These questions require consideration of the trust indenture dated April 16, 1929, which was to expire on December 31, 1938, but which by an amendment, dated October 31, 1935, was extended for a period of four years.

The parties to the instrument were, (1) the Chrysler Corporation; (2) the holders from time to time of the certificates of beneficial interest; and (3) certain designated trustees who were in effect managers of the Trust. The Trust was established pursuant to the plan of the Corporation "to attract and retain desirable officers and/or executives and to insure the permanency of sound and efficient management of the Corporation * * * by enabling such officers and/or executives to become owners of stock of the Corporation on a basis favorable to them * * *."

By Article One of the instrument the trustees were authorized to purchase up to 60,000 shares of the common stock of the Corporation at $60 per share and the Corporation agreed to loan them the cash to do so for which the Trust would give its note. Further, the Corporation agreed for a period of ten years to pay the Trustees 3% of its net earnings less certain deductions. By an amendment these percentages for certain future years were somewhat reduced.

By Article Four the Trustees were authorized after payment of expenses, debts and certain distributions to beneficiaries, to invest all its available funds in the common stock of the Corporation except that temporary investments might be made in Government securities. The Trustees were directed to set up two Surplus accounts. To account "A" was credited all amounts received as interest and dividends and to "B" was credited the annual payments from the Corporation and profits from sale or conversion of stocks, securities and other property. All management expenses, plus interest on the note due to the Corporation, were chargeable to "B" and if insufficient then to "A". Distributions to the holders of Shares of Beneficial Interest were chargeable to "A".

By Articles Five and Six certificates were to be issued to officers and/or executives of the Corporation and the selection of eligible executives and the allotment to each was made by a bonus committee which consisted of the president, chairman of the board and chairman of the finance committee of the Corporation and who notified the trustees of their choice. The selected executive was then entitled to receive the number of shares allotted to him, upon payment to the trustees within a specified time, of $25 in cash, per share. If he failed on the date fixed he forfeited his right to purchase.

The shares or certificates were not transferable or assignable by a beneficiary except to the Corporation upon termination of employment. If the termination resulted from death the administrator of the estate of the decedent was required by Article Seven to surrender the certificates to the Corporation, whereupon it would pay an amount computed upon the assets and liabilities of the Trust at the close of business on April 30, preceding his death, namely, book value of the shares. Book value took into account market value of Corporation stock as well as assets in the "A" and "B" accounts. The Corporation could retain the surrendered shares or transfer them to a new beneficiary upon the payment of $25 per share. As long as it retained any of the shares it had the same rights as though it were a beneficiary.

Article Eight gave the trustees plenary powers to manage the Trust, to enter reorganizations, to sell assets, to reinvest proceeds, to "make any distribution authorized by this Indenture, in kind or in cash, or partly in kind and partly in cash, and a determination of the Trustees as to the fairness and equality of such distribution shall be conclusive * * *"; to compromise claims, borrow money, pay obligations, etc. Upon expiration of the Trust

they were authorized to pay the Corporation all sums due it, to pay all expenses and make a pro rata distribution of the balance to the shareholders of shares of beneficial interest.

Article Thirteen provided that nothing should be deemed to "constitute the Beneficiaries partners with one another or with the Trustees, or impose upon the Beneficiaries any liability" except to pay $25 for each share allotted to and accepted by them and to surrender the certificates therefor to the Corporation upon termination of employment.

Article Fourteen provided that no employee of the Corporation should have any interest under the Trust except by action of the bonus committee, trustees or Corporation in accordance with its terms; that the creation of the Trust gave no employee the right to retention in its employment and that a beneficiary thereunder would be subject to discharge to the same extent as if the Trust had not been created.

Pursuant to the provisions of the trust instrument Alldis was allotted 100 shares of beneficial interest for which, prior to January 1, 1932, he paid $25 each and distributions thereon were made to him until his death on January 27, 1938, which he reported as income in the years received.

To be somewhat more specific than is indicated above as to the contention of the Commissioner, it is that that part of the $56,472.20 paid to the administratrix by the Corporation represented the annual contributions by the Corporation to the Trust, namely, the 3% less deductions, and constituted income under Sec. 22(a) of the Revenue Act of 1938 and applicable Treasury Regulations, and that that part of the payment which does not represent the decedent's aliquot share in what the petitioner is pleased to call "contract income" represents capital gain taxable to the decedent.

Article Seven states that "when any Beneficiary dies * * * he shall cease to be a Beneficiary and he or his * * * Administrator * * * shall cease to have any right, title or interest, beneficial or otherwise in the Trust Estate." This is crystal clear and we think it is equally clear that upon intestate's death on January 27, 1938, the respondent, administratrix, had a right to demand of the Corporation that it pay her in accordance with the provisions of Article Seven of the indenture but this was not an absolute or unqualified right. The Corporation was not required to pay until and unless she within one year after decedent's death should "surrender, transfer and assign to the Corporation his * * * Certificates for Shares of Beneficial Interest."

The Board in accordance with the stipulated facts found that during 1938 and of course after the decedent's death, the respondent, administratrix, did surrender, transfer and assign the decedent's 100 shares of beneficial interest to the Corporation and receive therefor the sum of $56,-472.20. We concur in the finding of the Board that this fund did not accrue to the decedent before his death but did accrue to respondent, administratrix, upon the discharge of her contractual obligation to the Corporation. The result is that it should not have been included in computing the decedent's net income for 1938, under Sec. 42 of the Revenue Act of 1938, 26 U.S.C.A.Int.Rev.Acts, page 1027.

We think that the provision of the trust indenture must control decision and the Board of Tax Appeals is accordingly affirmed.