**ROE v. UNITED STATES.**

No. 46465.

Court of Claims.

June 1, 1948.

The Estate of Emma B. Johnson, deceased (hereinafter sometimes referred to as "plaintiff" and as "the estate"), overpaid its income tax for the calendar year 1938 on the original income tax return prepared and filed March 15, 1939, for the Estate by Norman W. Roe, while acting as the duly appointed temporary administrator thereof by the Surrogate's Court of Suffolk County, New York, in which County the Will of Emma B. Johnson, deceased, was first offered for probate.

An amended return was subsequently made by the temporary administrator while probate proceedings were pending in New York County, showing certain charitable deductions under the terms of the Will of December 17, 1936, and Section 162(a), Revenue Act of 1938, 26 U.S.C.A.Int.Rev. Code, § 162(a), which had not been taken on the original return of income, and a timely claim for refund on account thereof was filed September 23, 1941. Shortly thereafter, on January 27, 1942, there was a pro forma or tentative disallowance of the claim, not upon its merits, but pending the outcome of litigation involving the probate of the will. The will was finally admitted to probate March 30, 1944, and soon thereafter the estate made written application for allowance of the refund claim, upon which application no action was taken and this suit followed.

The only question presented is whether, under the circumstances of this case, the letter of January 27, 1942, was intended as a complete and final disposition and disallowance of the claim for refund.

### Special Findings of Fact

1. Emma B. Johnson died a resident of New York County, New York, on December 29, 1937. She left a Last Will and Testament dated December 17, 1936, a true copy of which is in evidence as Exhibit 1, and is made a part hereof.

2. The executors named in said will were William A. Simonson (who predeceased decedent) and her brother, Norman W. Roe. Upon petition of Norman W. Roe, which among other things, alleged that decedent was domiciled at the time of her death in Patchogue, Suffolk County, New York, decedent's will was originally offered for probate on January 8, 1938, in the Surrogate's Court of Suffolk County, New York.

3. In that proceeding, objections were filed by interested parties alleging that decedent was domiciled at the time of her death in New York County and that accordingly the Suffolk County Surrogate's Court had no jurisdiction to probate decedent's will. These objections were dismissed by order of the Suffolk County Surrogate's Court and upon appeal from this order these objections were sustained by the Appellate Division of the Supreme Court of New York, Second Department, by order dated April 8, 1940. The action of the Appellate Division was affirmed by the Court of Appeals on December 4, 1940, holding, among other things, that the decedent was domiciled in New York County at the time of her death and that the Surrogate's Court of Suffolk County had no jurisdiction to probate her will or to grant letters testamentary or of administration thereon, discontinuing the proceedings for probate in Suffolk County Surrogate's Court and ordering that the New York County Surrogate's Court had jurisdiction to take proof of any paper propounded as the Last Will and Testament of decedent and to grant letters testamentary or of administration thereon. These proceedings on appeal are reported under the title "In the Matter of the Paper Propounded as the Last Will and Testament of Emma B. Johnson, Deceased," in In re Johnson's Will, 259 App.Div. 290, 18 N.Y.S.2d 958, and in Id., 284 N.Y. 733, 31 N.E.2d 202.

4. Thereafter, on December 18, 1940, a proceeding was instituted in the Surrogate's Court for New York County for probate of decedent's will and for issuance of letters testamentary thereon. Objections were filed to the probate of decedent's will in this proceeding. Among other things, it was objected that decedent had executed a subsequent will, dated September 8, 1937, which revoked the will offered for probate; that the 1937 will had been destroyed and revoked by the decedent, with the result that decedent died intestate. This objection was dismissed by order of the New York County Surrogate's Court, which was affirmed by the Appellate Division of the New York Supreme Court, First Department, on June 22, 1943 and by the Court of Appeals on January 13, 1944. These proceedings on appeal are reported under the title "In the Matter of the Probate of the Will of Emma B. Johnson, Deceased," in In re Johnson's Will, 266 App. Div. 837, 43 N.Y.S.2d 853, and in Id., 291 N.Y. 815, 53 N.E.2d 575.

5. Decedent's Last Will and Testament (Exhibit 1) was finally admitted to probate by the Surrogate's Court for New York County on March 30, 1944, and on April 12, 1944, letters testamentary were issued by that court to Norman W. Roe, as Executor. Since that date Norman W. Roe has been and still is the duly qualified and acting executor of the estate.

6. While the proceeding for probate of decedent's will was pending in the Surrogate's Court for Suffolk County, that court made an order, dated June 2, 1938, appointing Norman W. Roe and George H. Payne as Temporary Administrators of decedent's estate.

7. While the proceeding for probate of decedent's will was pending in the Surrogate's Court of New York County, that court made an order dated May 24, 1941, appointing the National City Bank of New York as Temporary Administrator of decedent's estate with limited powers.

This order was amended by five subsequent orders of the Surrogate's Court for New York County on June 11, 1941, September 19, 1941, May 5, 1942, December 4, 1942, and December 29, 1942. In the order of September 19, 1941, it was provided that the powers of the Bank as temporary administrator should include the execution and filing on or before December 31, 1941, of Federal and New York State income tax returns, both original and amended, and of claims for refund, and payment of any income taxes that might become due on or before December 31,

1941. In the order of December 4, 1942, it was provided that the Bank as temporary administrator should be authorized and empowered to execute and file a protest against a proposed deficiency on account of Federal income taxes for the years 1940 and 1941 and "generally, to execute and file a protest or appeal from any proposed or actual deficiency for Federal or New York income taxes."

In the order of December 29, 1942, it was provided that the powers of the Bank as temporary administrator should include the execution and filing of a petition to the United States Board of Tax Appeals seeking a redetermination of the proposed deficiency assessment of Federal estate tax and to execute and file a protest or appeal from any proposed or actual deficiency assessment for Federal or New York income taxes. Various other powers were also given the Bank in the orders above-mentioned which have no bearing on the issue involved herein.

8. August 21, 1943, an order was made in the Surrogate's Court for New York County appointing the National City Bank of New York as Temporary Administrator of decedent's estate.

9. March 15, 1939, a Federal income tax return for said decedent's estate for the calendar year 1938 was filed and payments in the amount of the tax shown by said return, totaling $56,010.36, were made to the Collector of Internal Revenue pursuant to orders of the Surrogate's Court of Suffolk County, as follows:

March 17, 1939 .............. $14,002.59
June 15, 1939 ................ 14,002.59
September 23, 1939 .......... 14,002.59
December 14, 1939 .......... 14,002.59

The above return was filed and the above payments of tax were made by Norman W. Roe and George H. Payne, as temporary administrators of decedent's estate, pursuant to their appointment by the Surrogate's Court for Suffolk County.

10. Article 37 of decedent's will dated December 17, 1936, admitted to probate on March 30, 1944, gives and bequeaths her residuary estate as follows:

"The rest, residue and remainder of my estate including lapsed legacies and meaning to embrace all of my estate not effectually and completely disposed of by this Last Will and so as to leave no possibility of any intestacy as to any portion thereof, I give and bequeath unto my brother, Norman W. Roe one-half, and the remaining one-half to these charitable organizations equally, viz.: The Home for the Blind—Office at Gates Avenue, Brooklyn, St. Faith's House, Tarrytown, N. Y., The Long Island College Hospital of Brooklyn in memory of John G. Johnson, M. D. (my husband)."

11. Each of the institutions named in Article 37 of the decedent's will, namely, The Home for the Blind, St. Faith's House and The Long Island College Hospital, is an institution organized and conducted exclusively for religious, charitable, scientific, literary or educational purposes within the provisions of Section 162(a) of the Revenue Act of 1938.

12. The net taxable income of decedent's estate reported in the aforesaid tax return for 1938 included the entire net income of the estate for that year without deduction for such portion of the income as was, pursuant to the terms of decedent's will, permanently set aside for the exclusive use of The Industrial Home for the Blind, St. Faith's House and The Long Island College Hospital, pursuant to the provisions of Section 162(a) of the Revenue Act of 1938.

13. September 23, 1941, pursuant to authority granted by the order of the Surrogate's Court of New York County, New York, dated September 19, 1941, the National City Bank of New York as temporary administrator filed an amended income tax return of said estate for the calendar year 1938 in which a deduction of $68,192.83 was claimed under the provisions of Section 162(a) of the Revenue Act of 1938, as the amount which was permanently set aside during the year for the Industrial Home for the Blind, St. Faith's House, and the Long Island College Hospital.

14. September 23, 1941, pursuant to authority granted by said order of the Surrogate's Court of New York County, New York, dated September 19, 1941, the National City Bank of New York, as

temporary administrator also filed a claim with the Collector of Internal Revenue, First District of New York, for the refund of an overpayment of $39,648.94 of the 1938 income tax, setting forth as the ground for said refund that there had been an overpayment of tax because of the inclusion in the gross income of the estate of the sum of $67,905.06 representing the amount of the income for said year permanently set aside within the year pursuant to the terms of decedent's will for the aforesaid charitable corporations as provided for in Section 162(a) of the Revenue Act of 1938, and setting forth a statement of the status of the litigation involved in connection with the contest of the decedent's will. A true copy of the claim for refund is attached to the petition in this case as Exhibit C and is made a part hereof by reference.

15. Subsequent to the filing of the amended 1938 income tax return and claim for refund, a revenue agent attached to the office of the Internal Revenue Agent in Charge, Brooklyn, New York, examined the amended return and refund claim and rendered a report of his examination on December 5, 1941, a copy of which was forwarded to the Estate of Emma B. Johnson, National City Bank of New York, on January 5, 1942, recommending that the aforesaid claim for refund not be allowed on the ground that "No evidence has been presented to show that any distribution of the income of the Estate has been made or can be made until the decision of the Court, as to the distribution of the assets, has been rendered. The distribution indicated in the amended return and used as a basis for the claim accompanying same is accordingly reversed." This recommendation was made solely because of the pending litigation involving objections to the probate of the will of December 17, 1936.

16. On January 27, 1942, the Commissioner of Internal Revenue, by an Acting Deputy Commissioner, addressed a form letter by registered mail to "National City Bank of New York, Temporary Administrator, Estate of Emma B. Johnson," as follows:

"Reference is made to revenue agent's report dated December 5, 1941, with respect to your tax liability. A copy of the report was forwarded to you, and you were informed that the claim or claims for refund indicated above would be disallowed.

"In accordance with the provisions of section 3772(a) (2) of the Internal Revenue Code, this notice of disallowance in full of your claim or claims is hereby given by registered mail."

The above-quoted notice was mailed by the Deputy because the will of December 17, 1936, then pending in the Surrogate's Court had not been formally admitted to probate and because the Commissioner was unable at that time to make a decision under the law and the facts on the merits of the claim. Such notice was tentative in character and was not intended as a final disallowance or disposition of the claim within the meaning of Section 3772(a) (2) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3772(a) (2).

17. February 6, 1942, the Commissioner of Internal Revenue forwarded to the National City Bank of New York, temporary administrator, a statutory notice of deficiency against the Estate of Emma B. Johnson, proposing a deficiency in estate tax of $1,495,357.14. A copy of the said notice is attached to the petition as Exhibit 2, and is made a part hereof by reference. Among other adjustments increasing the gross estate not involved in the pending litigation concerning the will of December 17, 1936, the Commissioner "tentatively" disallowed all deductions taken in the estate tax return under the terms of the will for charitable gifts and bequests, and said:

"According to the record litigation is pending affecting the instrument offered as the last will and testament of the decedent. Since the amount, if any, deductible on account of charitable claims under the latter instrument cannot, therefore, be determined pending outcome of the litigation referred to, the deductions claimed under this heading are disallowed."

18. May 7, 1942, the National City Bank of New York, as temporary administrator of the Estate of Emma B. Johnson, filed a petition with the Tax Court in which it alleged error on the part of the Commissioner with respect to each and every adjustment made in the aforesaid notice of

deficiency. This proceeding was assigned Tax Court Docket Number 110,944. The said proceeding is still pending before the Tax Court. A motion for substitution of Norman W. Roe, as Executor, in place of the National City Bank, as Temporary Administrator, was filed with the Tax Court on October 20, 1947, and allowed October 28, 1947.

19. In the petition filed with the Tax Court the National City Bank of New York, the petitioner, in subparagraph 6 of paragraph IV of the Statement of Facts in its petition, made the following statement:

"There has not as yet been any probate of the will of the decedent, and controversy with respect thereto has continued from a period shortly after the death of the decedent."

20. Subparagraph 11 of paragraph IV of the Statement of Facts in the petition filed with the Tax Court, contained the following statement with respect to the disallowance of the charitable bequests in the aforesaid notice of deficiency:

"The foregoing general bequests have been disallowed in the notice of deficiency on the ground that litigation is pending affecting the instrument offered as the last will and testament of the deceased, and that accordingly the amount deductible on account of charitable claims cannot be determined until the outcome of the litigation referred to."

21. In subparagraph 15 of paragraph IV of the Statement of Facts in the petition filed with the Tax Court, the following statement was made:

"The shares of such corporations were disallowed as deductions in the notice of deficiency on the ground that litigation is pending affecting the instrument offered as the last will and testament of the deceased, and that accordingly the amount deductible on account of charitable claims cannot be determined until the outcome of the litigation referred to."

22. July 6, 1942, the Commissioner of Internal Revenue filed his answer to the petition filed with the Tax Court by the National City Bank of New York. In answer to the statement set forth in sub-paragraph 6 of paragraph IV of the Statement of Facts in the petition, the Commissioner made the following statement:

"6. Admits the allegations contained in subparagraph 6 of paragraph IV of the petition."

23. In answer to the facts set forth in subparagraph 11 of paragraph IV of the Statement of Facts in the petition, the Commissioner made the following statement:

"11. Admits that the alleged charitable bequests have been disallowed in the notice of deficiency pending the outcome of litigation affecting the instrument offered as the last will and testament of the deceased. Denies the remaining allegations contained in subparagraph 11 of paragraph IV of the petition."

24. In answer to the facts set forth in subparagraph 15 of paragraph IV of the Statement of Facts in the petition, the Commissioner made the following statement:

"15. Admits that the claimed deductions have been disallowed in the notice of deficiency pending the outcome of litigation affecting the instrument offered as the last will and testament of the deceased. Denies the remaining allegations contained in subparagraph 15 of paragraph IV of the' petition."

25. April 20, 1945, the Estate of Emma B. Johnson addressed a letter to the Assistant Commissioner of Internal Revenue requesting that the letter dated January 27, 1942 (finding 16), be withdrawn and that the claim for refund filed on September 23, 1941, be allowed.

26. The correct net income of the estate for the year 1938, before allowance of any deduction under Section 162(a) of the Revenue Act of 1938, is $136,548.15, and the aggregate amount of such income permanently set aside for the Industrial Home for the Blind, St. Faith's House, and the Long Island College Hospital, which is allowable as a deduction under Section 162(a) of the Revenue Act of 1938, is $62,764.40.

The stipulation of facts does not contain a computation showing the amount of the overpayment for 1938 resulting from the

allowable deduction of $62,764.40 above-mentioned.

Frank J. Albus, of Washington, D. C., for plaintiffs.

Elizabeth B. Davis, of Washington, D. C., and Theron Lamar Caudle, Asst.Atty. Gen. (Robert N. Anderson and Andrew D. Sharpe, both of Washington, D. C., on the brief), for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

LITTLETON, Judge.

Emma B. Johnson died December 29, 1937, leaving a Will dated December 17, 1936, and the plaintiff Norman W. Roe is the duly appointed, qualified and acting executor of the decedent's estate. The estate is still in process of administration.

Upon the petition of Norman W. Roe which, among other things, alleged that decedent was domiciled in Suffolk County, New York, decedent's will was originally offered for probate on January 8, 1938, in the Surrogate's Court of Suffolk County.

Objections were filed alleging that decedent was domiciled at the time of her death in New York County. These objections were ultimately sustained by the Court of Appeals of New York on December 4, 1940, that court holding that decedent was domiciled in New York County at the time of her death, and ordering that the New York County Surrogate's Court had jurisdiction to take proof of any paper propounded as the last will and testament of decedent and to grant letters testamentary or of administration thereof.

Thereafter, on December 18, 1940, a proceeding was instituted in the Surrogate's Court for New York County for probate of decedent's will. Objections were filed to the probate of the will upon the ground, among others, that decedent had executed a subsequent will dated September 8, 1937, which revoked the will offered for probate; that the 1937 will had been destroyed and revoked by the decedent with the result that she died intestate. This objection was dismissed by order of the New York County Surrogate's Court, which was affirmed by the Appellate Division of the New York Supreme Court and, later, by the Court of Appeals on January 13, 1944.

Decedent's will dated December 17, 1936, was admitted to probate by the Surrogate's Court of New York County on March 30, 1944, and on April 25, 1944, letters testamentary were issued to Norman W. Roe as executor.

March 15, 1939, Norman W. Roe and George H. Payne, as temporary administrators of decedent's estate, filed an income tax return for the estate for the year 1938 showing a total tax due of $56,010.36, which was paid in quarterly installments during the year 1939. The net income of the estate was overstated in this return and the tax due was overpaid.

The overpayment resulted from the failure of the estate to deduct $62,764.40 representing the portion of the income of the estate which was, pursuant to the terms of the will of decedent, permanently set aside during 1938 for the exclusive use of certain charitable institutions within the meaning of Section 162(a) of the Revenue Act of 1938.

An amended return of income of the estate and a timely claim for refund of $39,648.94 were filed September 23, 1941, while the validity of the decedent's will, dated December 17, 1936, was being contested in the Surrogate's Court of New York County, and before the will was finally held to be valid and formally admitted to probate on March 30, 1944. The overpayment of the tax due is admitted.

Defendant says that the refund claim was completely and finally disallowed and rejected on January 27, 1942, and insists, therefore, that recovery of the admitted overpayment, due to failure of the estate to deduct $62,764.40 under Section 162(a), is barred since this suit was not instituted within two years thereafter.

Plaintiff contends that the form letter dated January 27, 1942, signed by the Acting Deputy Commissioner of Internal Revenue and sent to the National City Bank of New York, as the temporary administrator of the estate, pending final decision as to the validity of decedent's will, amounted to and was intended, under the circum-

stances, only as a tentative disallowance, due to inability of the Commissioner at that time to decide whether the deduction should be allowed or disallowed, pending the outcome of the litigation affecting the probate of the will dated December 17, 1936, offered for probate as the last will and testament of the deceased. None of the facts was in dispute. It is insisted, therefore, that the claim for refund actually subsisted as a valid claim subsequent to January 27, 1942, and was still open and subject to legal allowance pursuant to written application of the estate on April 20, 1945, in which it requested of the Commissioner of Internal Revenue that the letter of January 27, 1942, be withdrawn in view of the allowance of the probate, on March 30, 1944, of the will of December 17, 1936, and that the refund claim filed September 23, 1941, be allowed. No action was taken on this application. In these circumstances plaintiff contends that the refund claim has never in fact or in law been decided or finally disposed of or disallowed on its merits and that this suit is, therefore, not barred by the two-year statute of limitation, relied upon by counsel for defendant.

We are of the opinion that the facts and circumstances established by the stipulation of facts and the exhibits made a part thereof support the plaintiff's position, and we have so found (finding 16).

The notice of disallowance, quoted in finding 16, was mailed by the Deputy Commissioner, not because the claim was considered invalid or insufficient, but due to the fact that the Commissioner was not able at that time to make a decision on the law and the facts on the merits of the claim under the terms of the will and Section 162(a) of the Revenue Act of 1938. This notice was based solely on the statement in the agent's report of January 5, 1942, that "No evidence has been presented to show that any distribution of the income of the Estate has been made or can be made until the decision of the Court, as to the distribution of the assets, has been rendered. The distribution indicated in the amended return and used as a basis for the claim accompanying same is accordingly reversed."

The statement of the revenue agent was based, as the report and the refund claim disclosed, and as the Commissioner knew, upon the then existing status of the probate proceeding with respect to the will of December 17, 1936, under the provisions of which the charitable deductions were claimed and by which the deductibility of the amounts permanently set aside and credited to the charitable institutions was primarily governed.

The notice of January 27, 1942, was prepared on a mimeographed form letter, and we think it was not intended, in the circumstances of this case, as a final disallowance and disposition of the estate's claim for refund, but was intended only as a notice that under the circumstances a decision could not be made at that time on the merits of the claim, and that it was, therefore, being tentatively disallowed for the time being pending the outcome of the litigation concerning the probate of the decedent's will of December 17, 1936. Arthur K. Bourne et al. v. United States, 2 F.Supp. 228, 76 Ct.Cl. 680, 682–687; Mutual Chemical Co. v. United States, 5 F. Supp. 550, 78 Ct.Cl. 664; Henry Stanley Wood v. United States, 17 F.Supp. 521, 84 Ct.Cl. 367, 377, 378; Laurence R. Connor et al. v. United States, 13 F.Supp. 455, 82 Ct.Cl. 476, 497, 498. The facts set forth in the findings with reference to the Commissioner's action and admissions concerning the tentative nature of his disallowance of charitable bequests in the audit of the estate tax return, show that the letter of January 27, 1942, was intended only as a tentative disallowance and not a final disposition and rejection of the claim. Cf. American Hide & Leather Co. v. United States, 284 U.S. 343, 347, 348, 52 S.Ct. 154, 76 L.Ed. 331.

The controversy involving the question whether this Will, which had been offered for probate, was the last will and testament of the decedent and whether it should be admitted to probate was not finally determined and settled until March 30, 1944, almost five years after the income tax for 1938 had been paid. Long before that date the time within which an original refund claim could be filed had expired under the statute of limitations of three years

from the due date of the return and two years from the date of payment of the tax. Cf. B. Altman & Co. v. United States, 40 F.2d 781, 69 Ct.Cl. 721.

Soon after the will had been admitted to probate and plaintiff Roe had been appointed executor, the estate made written application to the Commissioner asking that the refund claim of September 23, 1941, be allowed for the amount of tax overpaid for 1938, pursuant to the terms of the will and the provisions of Section 162(a) of the Revenue Act of 1938. In the circumstances this application was proper and action in accordance therewith should have been taken. No action was taken thereon and this suit followed.

In view of the facts set forth in the findings and for the reasons stated, it is our decision that the suit by Norman W. Roe, as executor of the estate, was not barred at the time the petition was filed. The executor is, therefore, entitled on behalf of the estate to recover the overpayment in respect of the tax due for 1938, with interest as provided by law.

It is not necessary, in view of our decision that the suit by the executor is not barred, to discuss the alternative question whether Norman W. Roe, individually, the Industrial Home for the Blind, St. Faith's House, and the Long Island College Hospital, are entitled, as beneficiaries under the will of the decedent, to recover as for money had and received by defendant, under Section 250, Title 28 U.S.C.A. The petition as to Norman W. Roe, individually, and as to the other plaintiffs above-mentioned is, therefore, dismissed.

Judgment will be entered in favor of the executor of the estate upon the filing by the parties of a stipulation showing the amount due. It is so ordered.

HOWELL, Judge; MADDEN, Judge; and JONES, Chief Justice, concur.

WHITAKER, Judge (concurring).

I agree with the conclusion arrived at by the majority, but for a somewhat different reason.

Section 3772(a) (2) of the Internal Revenue Code provides:

"Time. No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the Commissioner renders a decision thereon within that time, nor after the expiration of two years from the date of mailing by registered mail by the Commissioner to the taxpayer of a notice of the disallowance of the part of the claim to which such suit or proceeding relates."

This prohibits the institution of a suit more than two years after the "mailing by registered mail by the Commissioner to the taxpayer of a notice of the disallowance of the part of the claim to which such suit or proceeding relates." The claim was unquestionably disallowed; there was nothing tentative about the disallowance; it was just disallowed. It was not disallowed "for the present" or "without prejudice," or "with the right to renew it," or with any other qualification; it was just disallowed. And the notice of this action was mailed more than two years before this suit was instituted.

However, I think section 3772(a) (2) clearly contemplated that the Commissioner should render a decision on the claim. It prohibited a suit before the expiration of six months after the claim was filed "unless the Commissioner renders a decision thereon within that time." The letter of disallowance quoted in finding 16 indicates rather clearly that the disallowance was not based on the merit or demerit of the claim but on the inability of the Commissioner to decide it at the time, because the facts upon which a decision had to be grounded had not then been established. Clearly there had been no decision. There was a disallowance, but no decision to support the disallowance. There was no decision because a decision could not then be made.

I do not think the disallowance was tentative, but it lacked the basis contemplated by the Act, to wit, a decision on the rights of the taxpayers. I would say, therefore, that the disallowance was ineffective, that there has not been that disallowance contemplated by the statute.

I think, therefore, plaintiffs' suit was filed in time.