## SCHMITT v. KAVANAGH.

Civ. A. No. 7306.

United States District Court
E. D. Michigan, S. D.

June 29, 1950.

Miller, Canfield, Paddock & Stone, Edward S. Reid, Jr. and William G. Butler, all of Detroit, Mich., for plaintiff.

Theron Lamar Caudle, Assistant Attorney General, Andrew D. Sharpe, James P. Garland, Special Assistants to the Attorney General, Edward T. Kane, United States Attorney, Roger P. O'Connor, Assistant United States Attorney, Detroit, Mich., for defendant.

LEVIN, District Judge.

This action is brought for the recovery of an amount which the parties agree has been an overpayment of Federal estate tax, plus interest thereon. The only issue is whether the plaintiff's cause of action is barred by the statute, Section 3772(a) (2) of the Internal Revenue Code.[1]

Suit was instituted more than two years from the mailing of a letter dated September 2, 1944, by the Commissioner of Internal Revenue to the plaintiff, and the question is to be resolved by the determination of whether that letter constituted a "notice of the disallowance" within the meaning of the quoted section of the Code.

The facts are not in controversy. On June 2, 1941, the plaintiff as executor of the estate of Paul C. Sauerbrey who died on March 3, 1940, paid to the defendant a Federal estate tax in the amount of $28,911.67. Contributing substantially to the Federal estate tax liability was an item of $134,962.96, representing the proceeds from shares of beneficial interest in a trust established by the Chrysler Corporation for the benefit of officers and executives of the corporation. The trust is known as the Chrysler Management Trust. Under the terms of the will and the provisions of the trust, the plaintiff was obliged to surrender the certificates to the trust for the consideration received.

The Commissioner of Internal Revenue, in reviewing the income tax return filed by the plaintiff on behalf of the decedent for the period from January 1, 1940, to March 3, 1940, was of the opinion that the proceeds from the shares of beneficial interest in the Chrysler Management Trust constituted additional compensation, and was not a part of the corpus of the estate as claimed by the plaintiff and, accordingly, should be treated as income in the last income tax return of the decedent. The Commissioner reported a deficiency of $75,040.23 in income tax for the period noted.

The plaintiff did not accept the determination of the Commissioner to the extent of $74,027.80 and the controversy was moved to the Board of Tax Appeals (now the Tax Court of the United States). The case was initially set for trial before a division of the Board of Tax Appeals in Detroit on September 11, 1944. In the meantime, on May 7, 1942, the plaintiff paid the defendant the sum of $79,120.60, being the amount of the alleged income tax deficiency as adjusted to the date of payment. On the same day he filed with the defendant a claim for refund (form 843) of this payment.

1. "(2) Time. No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the Commissioner renders a decision thereon within that time, nor after the expiration of two years from the date of mailing by registered mail by the Commissioner to the taxpayer of a notice of the disallowance of the part of the claim to which such suit or proceeding relates." 26 U.S.C.A. § 3772(a) (2).

On April 22, 1944, the plaintiff filed with the defendant a claim for refund in connection with the payment of the Federal estate tax. Attached to the official form (form 843) is a rider, and after describing the sale of the shares in the Chrysler Management Trust, the payment of the Federal estate tax, the payment of the alleged income tax deficiency and the proceedings then pending before the Tax Court of the United States, the rider concludes with the following two paragraphs:

"In the event that the Commissioner should ultimately prevail in his determination as aforementioned, then the $79,-120.60, as well as such further sums as may be paid in liquidation of said deficiency in Federal income tax, would become and be proper deductions from the decedent's gross estate for Federal estate tax purposes.

"If, on the other hand, the taxpayer should prevail in said income tax case, then the instant claim for refund would not be well founded. It is manifest, under the circumstances, that no decision can properly be made on this claim for refund until such time as a final disposition is made of said income tax case aforementioned."

The Commissioner did not see fit to await the disposition of the income tax case, and on September 2, 1944, wrote the plaintiff the following letter which the defendant maintains is the formal "notice of the disallowance" referred to in the statute:

"September 2, 1944

"MT-ET-6152-Michigan
Estate of Paul C. Sauerbrey
Date of death-March 3, 1940.

"Theodore Schmitt, Executor
c/o National Bank of Detroit
National Bank Building
Detroit, 32, Michigan.

"Dear Mr. Schmitt:

"Reference is made to the claim on Form 843 filed April 22, 1944, for the refund of $12,423.52 Federal estate tax paid on behalf of the above-named estate. The basis of the claim is the payment of decedent's income tax liability for the period of January 1, 1940, to March 3, 1940.

"It appears that an action contesting the validity of the assessment of the income tax liability in the sum of $75,040.23 is now pending before the Tax Court of the United States. Since it is uncertain what amount, if any, will be finally determined as payable in respect to the decedent's income tax liability and since this office is unable to indefinitely postpone action on the claim, your claim filed April 22, 1944, for the refund of $12,423.52 is rejected in its entirety.

"Very truly yours,
Joseph D. Nunan, Jr.
Commissioner
By: /s/ Adelbert Christy
Acting Deputy Commissioner"

At the time the Tax Court case was about to come to trial, the Detroit Office of the Technical Staff of the Bureau of Internal Revenue expressed the opinion that the case was governed by Commissioner of Internal Revenue v. Alldis' Estate, 6 Cir., 1944, 140 F.2d 885. As this conclusion would result in a decision favorable to the plaintiff, a stipulation was prepared in which it was set forth that an overpayment of income tax for the period from January 1, 1940, to March 3, 1940, had been made by the plaintiff in the principal amount of $74,027.80 plus interest. This stipulation was executed by the duly appointed attorneys for the plaintiff and was delivered to the Technical Staff for signature. The Chief of the Detroit Office of the Technical Staff stated, however, that he did not have authority to execute the stipulation, in view of the fact that it involved an overpayment in an amount exceeding $75,000, and he forwarded the stipulation to Washington for submission to the Joint Congressional Committee which is the final approving authority designated in such case. On September 9, 1946, the case of Frazer v. Commissioner of Internal Revenue, 157 F.2d 282, was decided by the Circuit Court of Appeals for the Sixth Circuit, which was interpreted by the Commissioner as being more favorable than the Alldis' Estate case to his determination of income tax deficiency. Shortly thereafter, the plaintiff was advised by the

Technical Staff that the Government had refused to sign the stipulation, and the pending Tax Court case was again set for trial.

Further settlement negotiations were then conducted between the plaintiff and the Technical Staff. The controversy was finally compromised on the basis that the deficiency in income tax for the period from January 1, 1940, to March 3, 1940, be the sum of $52,528.16 instead of $75,040.23 as originally claimed by the Commissioner. On April 14, 1947 an order was entered by the Tax Court which took into account the sum of $1,000.00 withheld by the taxpayer, and stated that "an overpayment of income tax for the calendar year 1940 in the amount of $21,512.07" had been made. On October 24, 1947, the Government refunded to the plaintiff the agreed amount of this income tax overpayment.

On November 19, 1947, the plaintiff by his attorneys addressed a letter to the Commissioner of Internal Revenue, referring to the claim of $12,423.52 as a refund of a part of the Federal estate tax. The letter set out a review of all the facts and suggested that since the overpayment of the Federal estate tax was then capable of being definitely determined, the Commissioner make the computation, and the plaintiff requested a remittance to the estate in the amount so determined. The overpayment as now computed is in the sum of $8,696.46. The Commissioner acknowledged this letter on January 30, 1948, and stated that the claim had been totally rejected by his letter of September 2, 1944, and could not be reopened because of the expiration of the statutory period.

Suit was filed after six months had elapsed from the date of the filing of the claim and within two years after the Commissioner's letter of January 30, 1948. Was the Commissioner legally capable of disallowing the refund claim on the merits by his letter of September 2, 1944? If not, it would appear that his action was capricious and ineffective and did not constitute a disallowance within the meaning of the statute.

In attempting to construe the applicable statutes, it may be helpful to keep in mind that the defendant admits that there has been an overpayment but asserts that the plaintiff has no remedy, notwithstanding the obvious attempt of Congress to make provision for refunds to taxpayers who have overpaid their taxes. Such an interpretation of the Code ought to be avoided unless it is clear that Congress intended to exclude such relief.

■■ The court is not unmindful of the fact that the United States cannot be sued unless it gives consent, and that the time within which suit may be brought after the disallowance of a claim is not controlled by a Statute of Limitation as generally understood but on conditions under which the United States has consented to be sued. But the statutory two year period would be meaningless here if the defendant's interpretation of the Commissioner's letter was adopted, because it would result in the plaintiff not having *any* period within which the suit could have been brought. Is it reasonable to assume that Congress intended that the bar to the bringing of a suit should become effective before a claimant could approach the court for the relief which Congress intended to make available? How could the Commissioner on September 2, 1944, pass upon the claim for refund of Federal estate taxes when his decision depended solely upon an income tax controversy which was not settled until April 14, 1947? The filing of suit prior to that date would have been a nullity because of the legal principle that before a valid suit may be instituted, a cause of action must have accrued in favor of the plaintiff. An event in the future which gives rise to a cause of action will not validate a suit filed in the past.

■ In connection with the disallowance of a claim, the Commissioner's powers must be construed as quasi judicial. If his stated decision, no matter what language he uses, clearly indicates that his action does not fall strictly within his delegated powers, such action is a nullity. In effect, what

the Commissioner said in his letter of September 2, 1944, was that by reason of certain circumstances in no manner affecting the merits of the claim for refund, he was unable to act upon it at that time, and that he did not find it convenient to postpone action until he could do so. His stated inability to act upon the claim resulted in inaction, no matter how he sought to explain it. The fact that he called it a rejection or even a disallowance does not change the fact that he did not exercise the powers vested in him by law and that he made no decision on the plaintiff's claim. Had he passed upon the claim, this court would not inquire into the basis of the Commissioner's decision. It is only concerned with the fact that, as he stated, he has given no consideration whatever to the plaintiff's claim. If the contention of the defendant, the Collector of Internal Revenue, is correct, the arbitrary refusal of the Commissioner of Internal Revenue to await the action of the Tax Court has deprived the plaintiff of a right conferred upon him by law. Compare Wood v. United States, 17 F. Supp. 521, 84 Ct.Cl. 367, certiorari denied, 302 U.S. 719, 58 S.Ct. 40, 82 L.Ed. 556; Roe v. United States, 77 F.Supp. 1010, 112 Ct.Cl. 224.

The defendant contends that Section 3774(b) (2) of the Internal Revenue Code[1] is the relief provided by law for the dilemma in which the plaintiff finds himself. This section is applicable only in the case where a claim for refund has been "disallowed by the Commissioner." Inasmuch as the court holds that the Commissioner did not act upon the claim, this section is not applicable. It may also be noted that the background of Section 3774(b) (2) indicates that it was not intended to apply to a case of this nature. This section was formerly known as Section 608(b) (2) of the Revenue Act of 1928, and the purpose for its enactment may be obtained from the Senate Committee Report (Int.Rev.Bull. 1939-16-9799 at page 44) : "It seems desirable to provide some means whereby, in connection with questions of broad application to a great number of cases, one test suit may be brought and all the other cases involving the same point may be held in abeyance until the test suit is decided. * * * This amendment will prevent a multiplicity of suits * * *."

This suit having been timely filed, judgment may be entered for the plaintiff.

1. "§ 3774. Refunds after periods of limitation.

"A refund of any portion of an internal revenue tax (or any interest, penalty, additional amount, or addition to such tax) shall be considered erroneous—

"*(a) Expiration of period for filing claim.* If made after the expiration of the period of limitation for filing claim therefor, unless within such period claim was filed; or

"*(b) Disallowance of claim and expiration of period for filing suit.* In the case of a claim filed within the proper time and disallowed by the Commissioner if the refund was made after the expiration of the period of limitation for filing suit, unless—

"(1) within such period suit was begun by the taxpayer, or

"(2) within such period, the taxpayer and the Commissioner agree in writing to suspend the running of the statute of limitations for filing suit from the date of the agreement to the date of final decision in one or more named cases then pending before the Board of Tax Appeals or the courts. If such agreement has been entered into, the running of such statute of limitations shall be suspended in accordance with the terms of the agreement." 26 U.S.C.A. § 3774.