**Sandra C. PEPPERS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 07–12484.**

United States District Court, E.D. Michigan, Southern Division.

Nov. 27, 2007.

Jerry R. Abraham, Abraham and Rose, Farmington Hills, MI, for Plaintiff.

Matthew Von Schuch, U.S. Department of Justice, Washington, DC, for Defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

DAVID M. LAWSON, District Judge.

The plaintiff, Sandra C. Peppers, filed this action seeking a refund of penalties on employment taxes paid to the government. A prerequisite to suit is a written claim for a refund submitted by the taxpayer to the Internal Revenue Service (IRS), which must list the grounds for the refund and the supporting facts. According to 26 U.S.C. § 6532, the plaintiff then must commence an action for the refund before "the expiration of 2 years from the date of mailing by certified mail ... by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates." 26 U.S.C. § 6532(a)(1). The plaintiff in this case submitted two claims for a refund of the same tax penalty paid, the second claim having expanded upon the facts supporting the plaintiff's position. The complaint in this case was filed within two years of the second claim but beyond the two-year period measured from the date of

refusal of the first claim. The question presented by the government's motion to dismiss is whether the second claim for refund started the two-year clock afresh, thereby rendering the complaint in this case timely. The parties have fully briefed the matter. The Court has reviewed the submissions of the parties and finds that the relevant law and facts have been set forth in the motion papers and that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *See* E.D. Mich. LR 7.1(e)(2). The Court finds that the plaintiff's second claim for a refund of the same tax penalty described in the first claim is based on essentially the same grounds as the first, and submitting (and the denial of) the second claim did not restart the period of limitations. Therefore, the complaint in this case is time-barred, and the court will grant the defendant's motion to dismiss.

### I.

The dispute in this case concerns payroll taxes on employees of the Greater Detroit Hospital, Inc. (Greater Detroit Hospital), which apparently were not collected and paid over to the government by the responsible corporate officials. The IRS determined that plaintiff Sandra Peppers was a person responsible for the collection of the tax and therefore assessed a trust fund recovery penalty against her in the amount of $214,607.36 pursuant to 26 U.S.C. § 6672(a).

The Greater Detroit Hospital was owned by the Greater Detroit Hospital and Medical Center, Inc., which had three shareholders: Soon Kim, Orekonde Ganesh and Linda Carroll. Linda Carroll was made the CEO of Greater Detroit Hospital in 1994, and plaintiff Peppers was made the Chief Operating Officer. Dr. Ganesh died in 1997, and Dr. Kim removed Ms. Carroll

as CEO. Jean Griggs was the Accounts Manager who, with the plaintiff, handled financial operations. After Ms. Carroll was removed as CEO, the plaintiff was appointed as acting CEO. When she assumed this position, she discovered the corporation was struggling financially. By August 1999, the plaintiff was serving as CEO without compensation.

According to the complaint, beginning in August 1999, the organization was out of funds but was assured funding by state and county officials. Based on that assurance, the hospital continued to issue payroll, planning to pay the required taxes when the county agency provided the funds. However, funding was not received, and the hospital ceased clinical operations in September 1999. The plaintiff quit her job in January, 2000. On September 28, 2004, the IRS assessed the plaintiff the $214,607.36 penalty for failing to collect and pay income and social security taxes required to be withheld from employees' paychecks.

Before the penalty was assessed, IRS agents conducted two interviews with the plaintiff. On April 19, 2001, the plaintiff met with agent Al Morrison, and on November 22, 2002 she met with agent Jeri Burger. Both IRS officers completed a Form 4180 documenting the interviews. On April 19, 2001, Morrison wrote that the plaintiff said the following:

I was aware of delinquency for the period in question at the time of occurrence. Taxes were authorized for payment but income did not materialize, which also led to suspended operations.

The applicable period is the last August payroll. Payment was made up to that point. There was no payroll issued after that period.

First week September 1999. Clinical operations suspended, attempted to gain a loan based upon projected volume of business. Attempt was unsuccessful.

Also sought support of legislature which was [unsuccessful].

During the period in question, July 1999–Dec.1999, the hospital closed down clinical operations during September. No payroll was issued after the first Aug. pay period. Beyond that point, a few critical persons continued to work without pay. The hospital's primary source of income was the Detroit–Wayne County Community Mental Health Agency (640 Temple Det, MI.) The hospital anticipated payment from this organization in September for the 99–2000 fiscal year and through Oct. was told we would be paid. This did not happen. The Agency stated we had been overpaid and our contract was cancelled. When the September check did not arrive, clinical operations were suspended.

Def.'s Reply, Decl. Joann Rogers, Ex. A, Form 4180 (Apr. 19, 2001). On November 11, 2002, the plaintiff stated:

[I r]ecommended that the corp close down or file bankruptcy, but the B of D wanted to keep facility open pending loan.

[I t]ried to work directly with the revenue officer [to see that the tax liabilities were paid]-not pay utilities + other bills in order to pay taxes[.] [I i]ntended to pay taxes with money due to be received by Det/Wayne Co Community Mental Health Agency & then they pulled the contract w/o payment.

.  .  .  .  .

In 1997, a stamp was obtained and used to sign general and payroll checks. Stamp was Sandra C Peppers' signature. Jean Griggs was the only person who used the stamp.

Normal procedure was to meet monthly and as needed (Peppers, Yanos & Griggs) to go over projected income-Revenue + Expense. At that time it was decided which bills would be paid.

At the time the taxes were due, was unaware that the taxes were not paid. There was so much going on with employees/records was not focusing on the payables. Jean Griggs made ultimate decision with the stamp as to which bills would be paid.

.    .    .    .    .

My expectation was that taxes were paid first and directed the payable department accordingly.

Def.'s Reply, Decl. Joann Rogers, Ex. B, Form 4180 (Nov. 22, 2002).

The IRS received the plaintiff's first Form 843, Claim for Refund and Request for Abatement, filed by her attorney Jerry Abraham, on February 28, 2005. The explanation stated:

This taxpayer was an employee of Greater Detroit Hospital, Inc. As evidenced by her Form 4180 and supporting corporate documents (as obtained under the FOIA) she had to answer to the president of the entity as well as its board of directors. Therefore, despite her direction to close the hospital and seek protection in the bankruptcy courts, the president and board elected to keep open with a bare bones staff. In addition, as the financial problems began she was under the belief that tax deposits were being made. These factors directly speak to both the wilfulness and requisite authority required to justify and sustain the assessment. We therefore request that this assessment be immediately abated.

Def.'s Mot., Ex., First Decl. of Joann Rogers, Ex. A. On April 29, 2005, the IRS denied the claim, and sent the disallowance to the plaintiff and her attorney. Def.'s Mot., Ex., First Decl. of Joann Rogers ¶¶ 4–5.

A second claim for refund was received by the IRS on January 10, 2007. This claim contained no explanation, except "See attached Affidavit of Sandra C. Pep-pers." Compl., Ex. A. The affidavit discusses the plaintiff's history with the company, and the turmoil among its three shareholders. *Ibid.* The affidavit provides the following information under the heading *"SITUATION RESULTING IN TAX DEFICIT:"*

"Although challenged, Greater Detroit Hospital was able to provide medical services and remain current with payroll taxes until July of 1999. At this time, D–WCCMHA [Detroit–Wayne County Community Mental Health Agency] funding for the months of July, August and September was delayed. The hospital was assured by Agency administration and Cassandra Smith–Gray, Wayne County Director of Health and Community Services, that funding was forthcoming. With this assurance, the hospital continued to issue payroll and planned to pay payroll taxes when Agency funding was received.

During the last week in August, the hospital was informed that the Agency contract would not be renewed and there would be no issue of outstanding funds. The hospital was requested to immediately transfer all Agency patients and records. With the loss of the primary funding stream, **all** clinical operations were suspended in September. The last regular payroll was issued in August. Some critical staff remained with the hospital to develop financial and political support to keep the hospital open.

Most of these persons, including myself, worked without compensation for the remainder of their service at the hospital. It was my understanding that a few persons would continue to be paid under the 1099 arrangement. A stamp of my name, controlled by the Accounts Manager, was used to issue these checks. Because my focus was on revenue development and hospital survival, I was not

aware that these persons were being paid as employees. For reasons beyond my control, some payroll checks were cut. I exercised significant oversight, I immediately instructed payroll to stop, but despite my instructions some payroll continued."

*Ibid.* The IRS denied this claim as well, "because [the plaintiff] previously filed a Claim for Refund, Form 843, and the claim was denied on April 29, 2005." Def.'s Mot., Ex., Decl. of Joann Rogers, Ex. E. The accompanying explanatory letter stated that the plaintiff must file suit within two years of the April 29, 2005 disallowance. *Ibid.* However, the plaintiff did not file the complaint until June 11, 2007. The government now moves to dismiss the complaint for want of subject matter jurisdiction.

## II.

■ The defendant argues that the Court does not have subject matter jurisdiction over the case and the matter must be dismissed according to Federal Rule of Civil Procedure 12(b)(1). Lack of subject matter jurisdiction may be asserted at any time, either in a pleading or a motion. Fed.R.Civ.P. 12(b)(1); *Television Reception Corp. v. Dunbar*, 426 F.2d 174, 177 (6th Cir.1970). When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Michigan Southern R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n., Inc.*, 287 F.3d 568, 573 (6th Cir.2002); *see also Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990).

■ In most circumstances, the failure to commence an action within the time permitted by law subjects a plaintiff to a statute of limitations defense. Interposing a statute of limitations generally is an affirmative defense, which can be waived if not asserted promptly, or can be vitiated by equitable tolling. *See Solomon v. Unit-ed States,* 467 F.3d 928, 932 (6th Cir.2006); *Scott v. Collins,* 286 F.3d 923 (6th Cir. 2002). The failure to abide by a statute of limitations does not affect the court's power to adjudicate a matter.

However, in some cases, time limits are jurisdictional, and the failure of a claimant to present his papers to a court in a timely manner deprives the court of the power to proceed. *See, e.g., Marshall v. Comm'r of Soc. Sec.,* 444 F.3d 837, 842 n. 3 (6th Cir.2006) (citing *Buck v. Sec'y of HHS,* 923 F.2d 1200, 1202 (6th Cir.1991)) (holding that the time limits in the Equal Access to Justice Act are jurisdictional); *Wikol ex rel. Wikol v. Birmingham Public Schools Bd. of Educ.,* 360 F.3d 604, 607 (6th Cir. 2004) (holding that the 30–day notice of appeal requirement is "mandatory and jurisdictional").

■ Complaints for refunds of taxes and penalties paid fall into the latter category, in that the timely filing of such claims is both mandatory and jurisdictional. That limitation derives from the proposition of sovereign immunity.

It is well established that a claim against the United States is barred absent waiver of sovereign immunity, " 'and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' " *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). A waiver of immunity cannot be implied; it must be "unequivocally expressed in the statutory text." *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996); *FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (holding that federal courts have no subject matter jurisdiction to hear a claim against the United States or one of its agencies absent a clear waiver of sovereign immunity).

The United States has expressly consented to suits by taxpayers for refunds of taxes and penalties paid. *See* 26 U.S.C. § 7422(f). However, such suits must be filed within two years of the decision by the IRS refusing the claim for refund. The governing statute states:

No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

26 U.S.C. § 6532(a)(1). Because Congress has explicitly provided for suits against the IRS for refunds only if the claimant files a complaint within two years of the agency's decision to deny a refund claim, courts do not have jurisdiction to entertain challenges brought later.

The jurisdictional nature of the two-year time limit has been recognized by this and other courts. *See, e.g., Compagnoni v. United States,* 173 F.3d 1369 (11th Cir. 1999) (holding that in statute authorizing suits against United States limits time period in which such suits may be brought, United States retains its sovereign immunity as to any suits brought outside of that time period; therefore, court does not have subject matter jurisdiction over suit against United States that is barred by statute of limitations); *Ohio Nat. Life Ins. Co. v. United States,* 922 F.2d 320, 324 (6th Cir.1990) (observing that "as with *most* periods of limitation involving suits against the sovereign, the prerequisites to suit described in section 6532's 'general rule' are jurisdictional"); *Stevens v. United States,* 859 F.Supp. 1110 (W.D.Mich.1994) (holding that since limitations section in Internal Revenue Code allows for suits against a sovereign, its requirements are jurisdictional); *United Iron & Metal Co. v. Carey,* 137 F.Supp. 712 (N.D.Ohio 1955) (stating that the section of the Internal Revenue Code limiting time for commencement of action for recovery of internal revenue tax paid is jurisdictional, and where claim is barred, action must be dismissed.); *Schmitt v. Kavanagh,* 91 F.Supp. 659, 662 (E.D.Mich.1950) (holding that the time within which suit may be brought after disallowance of a claim by IRS is "not controlled by a Statute of Limitation as generally understood but on conditions under which the United States has consented to be sued").

The parties agree that the complaint was filed in this court within two years of the mailing of the notice of disallowance of the second claim for refund, and outside the two-year period measured from the notice of disallowance of the first claim for refund. The timeliness of the plaintiff's complaint therefore turns on whether the second claim properly can be considered a separate claim rather than a reiteration or request for reconsideration of the first. "Any consideration, reconsideration, or action by the Secretary with respect to such claim following the mailing of a notice by certified mail or registered mail of disallowance shall not operate to extend the period within which suit may be begun." 26 U.S.C. § 6532(a)(4).

"If the second claim is based on different facts or legal theories from those contained in the first, then the second claim may merit independent treatment from the statute of limitations of I.R.C. § 6532(a)(1)." *Huettl v. United States,* 675 F.2d 239, 242 (9th Cir.1982) (opinion by Kennedy, J.); *see also in re Pransky,* 318 F.3d 536, 543 (3rd Cir.2003) ("If, however, the second request relies on different factual or legal grounds from those assert-

ed in the first request, the second request (to the extent that it differs from the first) will be considered a different claim entitled to its own limitations period beginning when the IRS sends a denial for that claim."); *L & H Co., Inc. v. United States,* 963 F.2d 949, 951 (7th Cir.1992) ("A submission of a second claim may expand the limitations period where the second claim alleges grounds or theories for recovery which are different from those set forth in the first claim."); *Bauer v. United States,* 594 F.2d 44, 47 (5th Cir.1979). However, "[i]t is well established that a second claim for a refund asserting the same grounds as the first does not extend the two-year period in which a suit must be filed." *Union Commerce Bank v. United States,* 638 F.2d 962, 963 (6th Cir.1981) (per curiam). The purpose of this stricture is to avoid permitting a taxpayer to "render the statute of limitations a nullity," *Jones v. United States,* 26 Cl.Ct. 424, 425 (1992), by "keep[ing] his claim 'fresh indefinitely' by merely reasserting it." *Kelson v. United States,* 503 F.2d 1291, 1293 (10th Cir.1974) (quoting Mertens, Law of Federal Income Taxation § 58.23 at 74 (1970)).

The first claim for refund was submitted in accordance with the applicable regulation using Form 843. The regulations specifies the requirements of the claim:

> The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

26 C.F.R. § 301.6402–2(b)(1). In order to comply with the requirement that the grounds and facts supporting the claim must be set forth, the plaintiff incorporated by reference the statements she made to the IRS agents memorialized in the interview memorandum, Form 4180.

The plaintiff argues that the second Form 843, which incorporates the attached affidavit from the plaintiff, contains new facts and new ground supporting her claim for a refund of the same penalty cited in the first claim. The plaintiff points to three new issues, which she says were not mentioned in the first claim. First, the plaintiff insists that she did not actually sign the payroll checks, but her signature was applied by another employee using a stamp. She argues that she did not have a duty under the Internal Revenue Code because only those individuals who actually sign the checks are liable, citing *Bauer v. United States,* 211 Ct.Cl. 276, 543 F.2d 142 (1976). Second, the plaintiff contended that she ordered all payroll to cease, so that the subsequent payroll activities proceeded without her knowledge or consent. She believes this is new and important because knowledge is an important consideration in determining liability, according to *United States v. Rem,* 38 F.3d 634 (2d Cir.1994). Third, her second claim contained facts about the lack of anticipated additional funding for the hospital, which she argues limits her liability to the amount of "actual funds" in her control. *Morgan v. United States,* 937 F.2d 281 (5th Cir.1991).

Each of these items was discussed in the interview memoranda that the plaintiff referenced in her first claim. The Forms 4180 completed by agents Morrison and Burger contain a recitation of the facts that a signature stamp was used to affix the plaintiff's name to the payroll checks, the plaintiff sought to terminate operations but was overruled by others in management, and the anticipated funding from the county agency never materialized. It is appropriate to engraft the statements in the Forms 4180 onto the first claim for

refund in this case because the plaintiff made specific reference to them. Otherwise, the claim may have failed for want of sufficient detail. The Sixth Circuit has recognized that the detail required of a claim may be gleaned from other encounters with the IRS concerning the same claim, such as "prior audit experience." *Union Commerce Bank v. United States*, 463 F.Supp. 842, 844 (N.D.Ohio 1978), *aff'd* 638 F.2d 962 (6th Cir.1981).

The attachment to the second claim form may provide some additional details, but that does not amount to a new claim. Instructive on this point is the Third Circuit's decision in *In re Pransky*, 318 F.3d 536, 543 (3rd Cir.2003), where the court held that there were no new grounds in a taxpayer's second request that "set out five pages of factual and legal arguments not included in his first." In that case, on the advice of counsel, the taxpayer had been overpaying his taxes for several years, but not submitting a tax return. When the taxpayer finally submitted the tax return, he marked that he wanted any overpayments to be directed towards subsequent liability. The government construed this as a request for a refund, and denied it as being outside the statute of limitations for refund of taxes in 26 U.S.C. § 6511. The taxpayer then submitted a factual and legal argument explaining why § 6511 should not apply, which the government again rejected. The court found that the submission of factual and legal arguments was merely a request for reconsideration, reasoning:

> The second but explained the factual and legal bases for the refunds he claimed in both requests. They added detail to the first requests, but the facts and legal theories on which Pransky sought relief had not changed. Thus, although the requests Pransky submitted did not look identical, the second requests are best characterized as motions for reconsideration of the first re-

quests, or as reiterations of the same claims. . . . And, importantly, the IRS denied the first requests on the same ground—the § 6511 reasoning—that Pransky explicitly argued in his second requests.

*Id.* at 543–44.

█ The Court must reach the same conclusion here. The second claim form may add details to the plaintiff's statement set forth in the original claim, but it contains no new grounds and amounts to nothing more than a request for reconsideration. Therefore, according to 26 U.S.C. § 6532(a)(4), the Court must measure the period of limitation from the date of denial of the first claim, which is April 29, 2005. The complaint was filed in this case on June 11, 2007, beyond the two-year period allowed by 26 U.S.C. § 6532(a)(1). As a consequence, the Court has no jurisdiction to proceed on that complaint.

### III.

The lawsuit in this case is time-barred, and the Court has no jurisdiction to proceed because the plaintiff has not satisfied a critical condition upon which the government will consent to suit.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt # 2] is **GRANTED.**

It is further **ORDERED** that the complaint is **DISMISSED.**